CASE 36.—ACTION BY ROSS HANLON AGAINST THE HARTFORD LIFE INSURANCE COMPANY FOR DECEIT IN INDUCING HIM TO ENTER INTO A WRITTEN CONTRACT OF LIFE INSURANCE WITH SAID COMPANY.—October 11, 1907.

## Hartford Life Ins. Co. v. Hanlon.

Appeal from Kenton Circuit Court.

Judgment for plaintiff, and defendant appeals.— Reversed.

Fraud—Actions—Waiver.—Where in negotiations for a life policy it was falsely represented by the insurer that at the end of five years insured would get a rebate of $12, and at the end of seven years he would get a dividend accumulation of $125, which would more than pay the premium from the seventh to the eighth year, and that after the seventh year the net premiums would constantly decrease by reason of credits thereon of accruing dividends, but notwithstanding that at the end of five and seven years such payments were not made, and the premiums did not decrease as repre-

sented, but increased, insured continued for three years after the first seven to pay the premiums, he waived the fraud, even though knowledge thereof was not brought to him at the end of five years.

FURBER & JACKSON for appellant.

S. D. ROUSE for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER.—Reversing.

This is an action in deceit for inducing appellee by false and fraudulent representations to enter into a written contract of insurance with appellant. The policy was dated June 18, 1894, and by its terms appellee's life was insured for the sum of $3,000. The premiums were payable quarterly. For the first seven years of the policy, the insurance was designated as "Term Insurance," and thereafter as "Assessment Insurance." The premiums were regularly paid for a period of ten years extending to the year, 1904, when appellee permitted the policy to lapse. The fraudulent representations charged in the petition are as follows:

"Plaintiff says that it was at the same time represented to him by the defendant, and its authorized agent, that while the sum total of the payments required by the defendant from and after the seven years mentioned in said policy by way of premiums, mortality calls and expense dues, would amount to much more than the premiums and expenses required to be paid for the seven years immediately succeeding the date of said policy, yet the dividends and distribution accruing and which would accrue to and for the benefit of plaintiff, and which would be credited upon the payments required to be made by plaintiff to said company, would thereby diminish

said payments so that the net payments so required to be made by plaintiff for said insurance, would not increase over and above what he should be required to pay within the seven years mentioned.''

''He says that after the end of seven years, instead of the dividends and distribution from the Safety Fund credited upon the calls made to him, resulting in reducing the same, until same were reduced to approximately the same amounts as has been required of him before, said payments of mortality calls increased from quarter to quarter in an enormous degree, until same nearly if not quite doubled the amount he had paid for the seven years referred to.''

After alleging that the representations were false and known to be false by the defendant, and that they were made for the purpose of inducing plaintiff to enter into the contract of insurance, and that plaintiff relied upon them and executed the contract in the belief that the representations were true, the petition says: ''He says that he did not discover that the representations of defendant were false and fraudulent until after the lapse of seven years, when said premiums immediately became higher, and the dividends agreed and promised to be paid did not diminish said premiums.''

The petition then concludes by asking judgment for $1,137.78, the amount of premiums paid, together with interest on each payment from the date same was paid. A demurrer to the petition was overruled, issue then joined, and the case submitted to the jury, which returned a verdict in favor of the appellee in the full sum asked. From an order refusing a new trial this appeal is prosecuted.

Counsel for appellant contend that appellee by continuing to pay his quarterly premiums on the policy after he knew of the fraud, waived and condoned the fraud, and ratified the contract of insurance.

The law is now well settled that a party to a contract obtained by fraud has but one election to repudiate or rescind the same. If he once determines his election, it is determined forever. Hence if it is shown that he has at any time after knowledge of the fraud, either by express words or by unequivocal acts, affirmed the contract, his election is irrevocable. By clearly manifesting his intention to abide by the contract, he condones the fraud, and is without remedy. He can not with knowledge of the fraud enjoy the benefits of the contract, and then file an action for deceit (Herman on Estoppel, 1045; Bigelow on Fraud, 436; Kingman & Co. v. Stoddard, 85 Fed. Rep. 740).

In the light of these principles, let us examine the evidence in this case. The particular representations alleged to be false, are stated by Mr. Thomas F. Hanlon, who was the agent of his father, Ross Hanlon, the appellee, in the negotiations resulting in the issuance of the policy. Mr. Hanlon said:

"And he told me the rate of premium, and that I would get a rebate at the end of five years of $12; and at the end of seven years, I would get a dividend accumulation, as he called it, of $125, and that would pay, he says—that would more than pay the premium from the seventh to the eighth year, after we had paid up seven years; and he said that after that, the premiums would decrease all the time, being as we had paid up that amount of money, they could afford

to decrease the premiums, and it would gradually get down to very little."

Assuming that these representations were made, though vehemently denied by the agent of the company, it appears from the evidence that no rebate of $12 was allowed at the end of five years. With knowledge of this fact, appellee continued to pay on the policy for the next two years. At the end of the two years, which was seven years from the date of the policy, no dividend accumulation of $125 was allowed by the company, and the next quarterly premium was larger than the preceding ones. From that time on the premiums increased instead of decreasing. Even if it be conceded then that the knowledge of the fraud was not brought to appellee at the end of five years, it was certainly brought to him at the end of the seven years, for he admits in his petition that he did discover that the representations of the defendant were false and fraudulent after the lapse of seven years, when the premiums immediately became higher, and the dividends agreed and promised to be paid, did not diminish the premiums. It can not, therefore, be denied that with the knowledge thus obtained, appellee continued to pay his quarterly premiums for a period of three years. When he discovered the fraud, he did not have even to ask a rescission of the contract. All he had to do, was to stop paying his permiums and bring an action for deceit. If he intended to rely upon the fraud, he ought to have done so at that time. Instead of doing so, however, he waived and condoned the fraud, and affirmed the contract by paying the quarterly premiums thereon for a period of three years. Having enjoyed the protection on his life during all

that time, he can not now claim damages for the very fraud which he has himself condoned.

Judgment reversed and cause remanded, with directions to dismiss the petition.