## Provident Savings Life Assurance Society of New York v. Shearer.

(Decided December 20, 1912.)

### Appeal from Kenton Circuit Court (Chancery, Common Law & Equity Division).

1. Contracts—When Written Cannot Be Affected By Parol Evidence.—The terms or conditions of a written contract cannot be varied, or contradicted, or added to, or subtracted from, by prior or contemporaneous parol agreements or arrangements between the parties unless for fraud or mutual mistake, but when the contract itself is attacked for fraud or want of consideration, parol evidence is competent to show its invalidity.

2. Evidence—Sufficiency of to Set Aside Written Contract.—The evidence to overturn a written contract should be clear and convincing, and especially should this be so when the parol evidence not only destroys the written contract but gives to the party attacking it advantages that he could not have obtained unless the conditions and stipulations of the writing constituted the real contract between the parties.

3. Contracts—Rescission on Equitable Terms.—Where a party who obtained a policy of insurance and paid the premiums for five years brought a suit to set aside the contract on the ground of fraud, and recovery of the premiums paid, if the contract is re-

scinded, there should be deducted from the amount of the recovery the premiums that the insured should have paid while the policy was in force.

WM. MARSHALL BULLITT and ALEXANDER G. BARRETT for appellant.

HALL & ADAMS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

In March, 1896, the appellee, Shearer, procured from the appellant company a ten year term policy for $5,000, in which the company obligated itself to pay the amount of the insurance only in the event the insured died before the expiration of the ten years. In October, 1905, a few months before this policy expired, the appellant company proposed to issue to Shearer a new form of insurance for $5,000 under the twenty payment life plan, the policy to be dated back to March, 1896, in order that Shearer might have the benefit of the premium rate based on his age in 1896, in place of the higher rate he would be required to pay if his policy was dated in 1905. As a result of conferences between Sprout, the agent of appellant, and Shearer, the latter, on October 26, 1905, made a written application to surrender his old policy and take out the new twenty payment life, which was to be dated March 27, 1896, to correspond with the date of the old policy. Soon after this the application was accepted and the new policy issued. As a part of the plan by which the old policy was surrendered and the new one issued, Shearer executed his note to the company for $1,826, this amount representing the reserve against the policy, which under the law the company was required to have either in money or in a secured note.

The application made by Shearer for the new policy contained among others this clause: "The Provident Savings Life Assurance Society of New York agrees to loan to the assured the sum of $1,826 upon the security of said policy, and the said amount shall be a lien upon said policy when issued until the same is paid, and it is also understood and agreed that the said assured is hereby authorized to sign a collateral loan note to secure the repayment of said sum in the form in use by said society."

The note Shearer signed was dated October 26, 1905, and reads in part: "For value received, I promise to pay to the Provident Saving Life Assurance Society of New York, or order, $1,826, with interest at the rate of 5 per cent per annum, payable on the 27th day of March in each year. * * * The policy and all amounts payable thereon are hereby assigned, pledged and hypothecated to said society. * * * The assured has the privilege of paying this loan at any time prior to the termination of the policy. Should the policy become payable while this note is outstanding, the amount of the note, with any additional loans, and all interest due thereon, shall be deducted by said society from the amount due on this policy."

The new policy issued to Shearer obligated him to pay on the 27th day of March in each year an annual premium of $287.60, and Shearer paid these premiums for four years, which carried this policy up until March 27, 1910, at which time the fifth premium became due. On March 7, 1910, Shearer wrote to the company a letter in which he said in substance that he understood the value of the policy at the expiration of the twenty years would be $5,000 less the amount of the note he had executed for $1,826, and requested the company to advise him what the total amount of the indebtedness against the policy at that time was and what it would be on each succeeding year until the expiration of the twenty years. In answer to this the company, on March 16, wrote him and gave him the information he inquired for.

On March 22nd Shearer paid to the company $71.90 in cash and executed his note for $215.70, the remainder of the premium due on March 27, 1910. This note was due on June 27, 1910, and on June 25th Shearer advised the company that he had concluded not to carry the insurance any longer, and did not pay the note. In January, 1911, he brought this suit against the company to recover from it $1,222.30, the full amount of the premiums he had paid each year from 1906 to 1910 inclusive, with interest thereon from the date of each payment and in addition thereto, $750 which he alleged was the value to him of the old policy which he surrendered to the company. His action was based on the ground that the company, by false and fraudulent representations induced him to surrender his old policy and accept in place of it the new one. He averred that it was represented to

him that the note he executed would not be a lien against the policy or an indebtedness against him, and that it was only required that he execute it to go through the form of complying with certain laws of the State of New York. He further averred that it was represented to him that the new policy in twenty years from its date, or in March, 1916, would become a paid-up policy for the face value of $5,000, with a cash surrender value of $3,-620, and that he was induced by these representations to surrender his old policy and accept the new one, and did not learn of the deception and fraud that had been practiced on him until 1910 when he received the letter before mentioned from the company, advising him that the note he executed was a lien against the policy and would be deducted from it. To this suit the company made a number of defenses, and upon a trial before a jury a verdict was returned in favor of Shearer for the premiums paid by him in 1906, 1907, 1908, 1909 and 1910, with interest on each from the date of its payment. A reversal is asked on several grounds but we will only notice two: one, that the request of appellant for a peremptory instruction should have been granted, and the other, that the verdict is flagrantly against the evidence.

In support of the proposition that a verdict should have been directed in its favor, the argument is made by counsel for appellant that it was not competent to contradict, by parol evidence, the stipulations in the note of $1,826, or the conditions of the application made by Shearer, because it is said the terms of a written contract cannot be impeached by parol evidence.

The rule is elementary that the terms or conditions of a written contract, in the absence of fraud or mutual mistake in its execution, cannot be varied, or contradicted, or added to, or subtracted from, by prior or contemporaneous, parol agreements or arrangements between the parties to the written memorial: Farmers Bank of Wickliffe v. Wickliffe, 131 Ky., 787; Anthony v. Hudson, 131 Ky., 185; Sayler v. Sayler, 141 Ky., 648; Sackett v. Maggard, 142 Ky., 500.

But the broadest application of this rule does not deny to a party the right to attack, in its entirety, with parol evidence, a contract for fraud or want of consideration. Any written contract, without reference to what form it may be put in, and without regard to the circumstances attending its execution, can be assailed, as a whole with parol

evidence for fraud or for want of consideration. If this were not true, a written contract, however fraudulent or destitute of consideration, could be enforced, and the party who signed a written obligation would be helpless to protect or defend himself against its enforcement, although he might be able to show, by the most convincing parol evidence, that it was procured by fraud or that there was no consideration for its execution. The exception that we have stated to the general rule rejecting parol evidence to vary a written contract, is too well settled to need more than the mere citation of authorities. Stone v. Ramsey, 4 T. B. Mon., 236; Tribble v. Oldham, 5 J. J. Marshall, 137; Doyle v. Offutt, 135 Ky., 296; Cummings v. Cass, 52 N. J. L., 77; Page on Contracts, section 1207; Greenleaf on Evidence, section 284; Lavalleur v. Hahn, 152 Ia., 649.

Equally untenable is the proposition that the admitted evidence was made incompetent by section 677 of the Kentucky Statutes, providing, in substance, that every policy of insurance shall have attached to it a correct copy of the application, and, unless so attached, such application shall not be received as evidence in any controversy between the parties. The argument upon this point is, that, as the application signed by Shearer stipulated that this note should be a lien upon the policy, it was not competent to contradict by parol this condition. Generally speaking this is true, but when the entire contract of which the application is a part is attacked for fraud, as may be done, and the contract set aside upon this ground by parol evidence, if it be sufficient in quantity and quality, the application, being a part of the contract, must go with it, and the rule laid down in Southern States Mutual Life Ins. Co. v. Herlihy, 138 Ky., 359, and Prov. Savings Co. v. Withers, 132 Ky., 541, has no application. The court therefore, did not commit error in refusing at the instance of appellant, to take the case from the jury, as of course should have been done if the parol evidence offered by Shearer was incompetent. Nor should Shearer be estopped to seek a cancellation on the ground that he elected to keep the policy after notice of its conditions as the facts do not bring the case within the principle laid down in Hartford Life Ins. Co. v. Hanlon, 139 Ky., 346.

The contention that the verdict was flagrantly against the evidence is more meritorious. The case for Shearer is put upon the ground that he was induced to surrender

his old contract of insurance and accept the new by the false and fraudulent representations of the agent of appellant—and upon which he relied—that the note for $1,826, executed by him, would not be a lien upon the new policy or an obligation that he would be required to pay. The only evidence introduced to support this contention was the testimony of Shearer and his son, both of whom stated that the agent said that the only reason for requiring the note was to enable the insurance company to comply with certain laws of the state of New York, and that the note would not be a lien upon the policy or an obligation that the maker would be expected to pay.

In contradiction to this evidence there is the written application signed by Shearer in which it is expressly stipulated that the note—describing it—shall be a lien upon the policy until paid, and the note itself sets out that Shearer agrees to pay the amount of it with interest at the rate of 5 per cent, and that the policy is assigned and pledged to secure it. In addition to this the evidence shows that each year before the annual premium became due the company sent Shearer a notice informing him when his premium would be due, as well as the interest, on the note. The interest, however, was never paid.

The agent who negotiated the transaction also flatly contradicts Shearer and his son and testifies that both of them fully understood the terms and effect of the writings, and that he made no statement whatever in conflict with these papers. As a circumstance tending strongly to support the testimony of the agent, it appears that, if Shearer's understanding of the contract was correct, he would have insurance when he was the age of fifty-seven at the same rate that insurance was issued to persons forty-seven years of age, and in addition to this, the policy would have a loan as well as a cash surrender value much larger than such policy would ordinarily have.

The parol evidence sufficient to overturn a written contract should be clear and convincing, and especially should this be so when the parol evidence not only destroys the written contract, but gives to the party attacking it advantages that he could not have obtained unless the conditions and stipulations of the writing constituted the real contract between the parties.

Our opinion is that the parol evidence in behalf of Shearer, an intelligent, educated man, was not sufficient, under the circumstances of this case, to overcome the written evidences of the contract deliberately executed by him. The contract made by Shearer was not harsh or unreasonable. There was no hurry, or over-reaching, or other badge of fraud in its execution. Shearer continued for about five years to receive protection under it, and annually, during this time, paid his premiums, and paid the last one in part after he had become dissatisfied with the policy, if he did not actually know all its conditions and terms. Written contracts would be virtually as insecure as parol contracts if they might be set aside under circumstances and facts such as appear in this case.

We think the verdict was flagrantly against the evidence, and that the lower court should have granted a new trial on this ground. There is another feature of this case that needs to be noticed. If the judgment appealed from should be allowed to stand and the company be required to return to Shearer the premiums he paid, with interest thereon, the necessary effect would be to give Shearer the full benefit of the policy during the time it was in force without any cost to him. During this time Shearer was protected by the policy, and if he had died the company would have been compelled to have paid the amount it agreed to pay in the contract of insurance. It is, therefore, very plain that if this contract is to be canceled and rescinded, it should be done upon equitable terms. The insurance company should not be required to carry insurance upon the life of Shearer for nearly five years without receiving any premium therefor, nor should Shearer be allowed to recover the premiums and yet not pay the insurance company anything for the insurance he had upon his life during the perior covered by these premiums.

Therefore, if, upon another trial of the case, there is a verdict against the insurance company, as there was on the last trial, the lower court, before entering a judgment on this verdict, should ascertain from the pleadings and evidence the amount that Shearer should pay the company for the insurance he had during the time the policy was in force, and deduct this amount from the finding of the jury, and enter judgment for the remainder. He may also ascertain and give Shearer credit by the value of his old policy, if it had any, when he sur-

rendered it.   The parties, on a return of the case, may file such additional pleadings, and. take, at the proper time, such evidence as may be necessary to enable the court if the contract is rescinded, to rescind it upon equitable terms.

The judgment is reversed, with directions for a new trial in conformity with this opinion.