## F. T. Gunther Grocery Company v. Koll, et al.

(Decided April 29, 1913.)

### Appeal from Daviess Circuit Court.

1. Contracts—In Partial Restraint of Trade Are Valid.— Where a firm doing business in a city sold its stock of goods and good will to another firm engaged in the same business, and as a part of the contract of sale the vendors agreed not to engage in the same business in the city, the vendees could maintain an action to restrain the vendors from engaging in business in violation of the contract.

2. Contracts—Consideration Necessary to Validity of.—A good or a valuable consideration is essential to the validity of a contract, and this principle applies to contracts in partial restraint of trade as well as to other contracts.

3. Contracts—Date of—Parol Evidence—When Competent to Show Error in Date—Pleadings.—Where a written contract recited that on a date therein mentioned the transaction to which the contract referred took place, it was competent to show by parol evidence that the date was erroneous, but in order to make this evidence admissible there should be a pleading charging that the date was incorrectly given in the contract by fraud or mistake.

4. Contracts—Date May Be Shown by Parol Evidence.—The date is not essential to the validity of a contract, and when a contract bears no date the true date of its execution may be shown by parol without averments of fraud or mistake, because such evidence would not contradict the writing; but when it is sought to show that the date given in the contract is incorrect, and the time of the execution of the contract is material, parol evidence will not be competent to show the incorrectness of the date in the absence of a pleading setting out fraud or mistake in the insertion of the date.

R. A. MILLER, C. M. FINN for appellant.

BEN D. RINGO for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

In July, 1905, the Koltinskys, whose names were subsequently changed to Koll, were engaged in the wholesale grocery business in the city of Owensboro under the firm name of Koltinsky & Son. There was also engaged in the wholesale grocery business in the same city at the same time the F. T. Gunther Grocery Co., and these houses were in active competition. The Gunther Grocery Co. purchased the stock of goods and good will of Koltinsky & Son, and on July 3, 1905, Koltinsky & Son executed and delivered to the Gunther Grocery Co. a written contract reading as follows:

"Be it known to all men by these presents, that we, H. L. Koltinsky and Ben C. Koltinsky, doing business under the firm name of H. L. Koltinsky & Son, have this day sold our stock of merchandise and good will to the F. T. Gunther Grocery Co., for ninety cents on the dollar. To be paid for as follows: One thousand dollars to be paid when the invoice is taken, and the balance in thirty days, with interest from date of inventory.

The said H. L. & B. C. Koltinsky individually and as a firm bind themselves not to engage in the wholesale grocery business in the city of Owensboro, either directly or indirectly, as long as the F. T. Gunther Grocery Co. is engaged in said business in said city. They further agree to use their influence for the benefit of the F. T. Gunther Grocery Co."

A few years after the execution of this contract H. L. Koltinsky, or his wife, obtained an interest in the Vick Miller Candy Co., a concern engaged in the grocery business in Owensboro in competition with the F. T. Gunther Grocery Co., and Koltinsky became a manager of the Vick Miller Candy Co. Soon after Koltinsky took this employment the F. T. Gunther Grocery Co. brought this suit to enjoin him from continuing his connection with the Vick Miller Candy Co., upon the ground that his employment was forbidden by the contract. In his answer to this petition Koltinsky did not deny the execution of delivery of the contract, but in the second paragraph of his answer relied on this defense:

"These defendants admit that during the month of June, 1905, they sold to the plaintiff a stock of merchandise, it being a stock of wholesale groceries then owned by them doing business in the firm name of H. L. Koltinsky & Son, for and at the price of ninety cents on the

dollar of the actual cost of said goods, but they say that said contract was verbal and was not in writing, and that the sole and only consideration agreed to be paid for said goods was ninety cents on the dollar of the actual cost thereof.

"These defendants admit that a contract dated July 3, 1905, was signed in the manner and form of signature as set out in the petition, but they state that there was no consideration of any kind whatever for the execution or delivery of said writing, that the plaintiff did not pay or give to said firm or either one of these defendants anything of any value whatever for the execution and delivery of said paper, neither did said firm or these defendants or either of them receive anything of any value or any consideration whatever for signing and delivering said paper. They say that the sale of said goods was made and said goods or the most of them were invoiced and delivered before the written contract set out in the petition was prepared or mentioned or discussed. They say that in the sale of their said stock the good will of their business was not sold or even mentioned, nor was there anything said whatever about their agreement not to again engage in the wholesale grocery business in Owensboro, Ky., until after the said contract of sale of said stock was made and completed. They say that sometime after the sale of said stock of goods was made and the contract therefor completed, the plaintiff approached the defendants and asked them to sign the agreement set out in the petition, which was signed in the manner shown in the petition and delivered, but there was no consideration whatever for the signing or delivering of said paper, which was made to recite untruthfully that the sale was made on July 3, 1905, and that a part of the consideration was the good will and agreement not to again engage in the wholesale grocery business in Owensboro, Ky., so long as the plaintiff should be engaged in that business in said city, and they say that the said contract set out in the petition is void and of no effect."

In the third paragraph of his answer he further averred that the contract was void as against public policy. So far as concerns the defense that the contract was void as against public policy, it need only be said that we have too often held contracts like this valid and enforceable to make it necessary to do more than cite the cases of Pike v. Thomas, 4 Bibb, 486; Grundy v. Ed-

wards, 7 J. J. Mar., 368; Long v. O'Bryan, 28 Ky. L. R., 1062; Skaggs v. Simpson, 110 S. W., 251.

In reference to the defense set up in the second paragraph of the answer, it will be observed that it is rested on the ground that the contract by which Koltinsky & Son sold their goods was completed by the delivery of the goods and the payment of the purchase money before the written contract was executed or delivered, and therefore there was no consideration for this contract.

It is elementary that a good or a valuable consideration is essential to the validity of a contract, and this principle applies to contracts in partial restraint of trade as well as to other contracts; but the real question here presented is, did the second paragraph of the answer state facts sufficient to make available this defense? In view of the conclusion we have reached, that the answer did not authorize the introduction of evidence in contradiction of the writing, it does not seem necessary to relate the evidence for and against the proposition that the contract was in fact fully executed before the execution and delivery of the writing. We may, however, notice in passing that if the answer had presented a sufficient defense to avoid the written contract, we would nevertheless say that the weight of the evidence conduces to show that the writing was executed before and not after the sale and delivery of the goods.

But getting back to the answer, we do not think it presented a defense authorizing the admission of evidence to show that the contract was executed and delivered after the purchase and sale of the goods had been completed. It will be observed that this writing bears the date of July 3, 1905, and that it recites that "we, H. L. Koltinsky and Ben C. Koltinsky, doing business under the firm name of H. L. Koltinsky & Son, have this day sold our stock of merchandise and good will to the F. T. Gunther Grocery Co." The question is, was it not necessary to admit proof in contradiction of the recitals of this writing that the answer should have pleaded in apt terms fraud or mistake in the recitals of the writing? If the recitals in this writing are true, it was executed and delivered on the day the goods were sold, and not, as the evidence for Koltinsky tended to show, some days after the sale and purchase of the goods had been completed by the delivery of the goods and the payment of the purchase price. If the recitals in the writing were not true, and they were made as the result of fraud or mutual mis-

take, Koltinsky could have shown this fact by parol evidence; but to make this evidence competent it was necessary that he should have pleaded the fraud or mistake, and this, in our opinion, he did not do. The averment in the answer that the writing "was made to recite untruthfully that the sale was made on July 3, 1905," falls short of being an averment that an incorrect date was inserted in the contract by fraud or mutual mistake.

A recital in a writing might be untruthful, or might state as a fact something that in truth had no existence, but it would not follow from this that the untruthful recital was the result of either fraud or mutual mistake. An untruthful recital might be inserted in a contract with the knowledge and consent of both parties to it and without fraud or mistake on the part of either. But when fraud or mistake enters into a contract obviously the contract does not express the real intention of the parties, and consequently one of them, by reason of the fraud or mistake, has suffered a wrong, to redress which he may appeal to the law, and upon proof of the fraud or mistake obtain the relief to which he shows himself entitled.

But the law esteems very highly the integrity of written contracts, and the rule without exception so far as we know, is that a written contract, deliberately entered into, cannot be modified or set aside by one of the parties to it in the absence of fraud or mutual mistake in its execution. This principle in the law of contracts is everywhere recognized and has been announced by this court times without number. Among the late cases we may mention J. I. Case Threshing Machine Co. v. Mattingly, 142 Ky., 581; Provident Savings Life Assurance Society of New York v. Shearer, 151 Ky., 298; Crawford & Gatlin v. Livingston & Co., 153 Ky., 58.

Nor is the rule of pleading that we have announced to be regarded as technical. It is substantial and well established, and, like other long settled rules of pleading intended to give system and certainty to the administration of the law without imposing unreasonable requirements on the pleader, should not be departed from.

It is suggested that the date of the contract may be shown to be incorrect without a plea of fraud or mutual mistake, but we do not find any authority in support of this proposition nor do we know of any reason why less importance should be attached to the date of the contract than to any other part of it when the date is material, or

why one rule of pleading should be applied to the date and another to other parts of the contract. One material part of a written contract is entitled to as much weight as another, and no part of it should be lightly put aside. Combs v. Combs, 130 Ky., 827; Tribble v. Oldham, 5 J. J. Mar., 137.

As an illustration of the importance in many transactions of the date of a contract this case furnishes a good example. The defense is that there was no consideration for the execution of the contract, but this defense depends entirely on the question whether the contract was executed as a part of the sale and purchase of the goods or after the trade had been closed. Therefore, the date of the contract is the real point in issue and a very material part of the contract. We do not, of course, mean to say that the date is essential to the validity of a contract or that when a contract bears no date the true date of its execution may not be shown by parol without averments of fraud or mistake, because such evidence would not contradict the writing.

It is also, of course, competent to show by parol that a contract was finally executed and delivered subsequent to the date shown on its face, just as it is competent to show the existence of false or incorrect statements contained in any other part of the contract. District of Columbia v. Camden Iron Works, 181 U. S., 453, 45 Law Ed., 948. But before parol evidence is admissible to show an error in the material date of a contract it must be pleaded that the erroneous date was inserted by fraud or mistake.

In Breeding v. Tandy, 148 Ky., 345, we had occasion to consider the effect of the date of a contract. In that case, as in this, the defense was that the sale of a livery stable had been completed before the writing was executed binding the party who sold it not to engage in business. The answer, relying upon this defense, admitted the execution of the writing, but claimed that it had been executed after the trade had been completed, and so was no part of the contract and without consideration. In holding that this defense did not authorize the admission of parol evidence to contradict the writing, which recited that the sale was made on a named day, we said:

"Appellee admits executing this paper, bearing date May 31st, and he does not seek to avoid the force and effect thereof by a plea that it was executed through fraud or mistake. He does not deny that it bore the date

of May 31st, when it was executed, although he does testify, and introduces some proof tending to corroborate him upon this point, that it was not signed for some days after May 31st. His pleading, however, does not support this proof. He does not plead that there was any fraud or mistake in the execution of the paper bearing date of May 31st, nor does he plead that he did not sign the paper on that date, although he does plead that it was not signed for several days after the trade was made; this may be literally true, and yet the paper have been signed on May 31st, for they were several days in making this trade. The date which the contract bears may be shown to be erroneous, just as any other part of the contract may be attacked for fraud or mistake; but, before parol evidence showing such error can be introduced, there must be some appropriate plea to support it. The charge of fraud does not have to be set out in any particular form. It is sufficient if the facts pleaded amount to a charge that the date, or the provision of the contract sought to be avoided, was inserted by fraud or mistake. The plea in the case at bar does not measure up to this requirement, as to the date which the contract bears. Indeed, it is apparent that the pleader did not intend to attack the date which the paper bore, with the view of showing that it was executed on a different date. On the contrary, it is apparent that the whole purpose of this plea was to show that there was no consideration for the contract. Having admitted signing the paper, and not pleading either fraud or mistake in its execution, or the date which it bears, appellee is bound by its terms.''

The reasoning of this opinion, in which we concur, seems conclusive of the present case, and the judgment is reversed, with directions to enter a judgment granting the Gunther Grocery Co. the relief sought.