## Amick v. Elliott.

(Decided January 27, 1928.)

### Appeal from Pike Circuit Court

1.  Corporations.—It is a fundamental principle of law concerning private corporations that a subscriber for stock therein must pay to the corporation the amount of his subscription.
2.  Corporations.—Ky. Stats., sec. 547, making stockholders liable to creditors of a corporation for their unpaid stock subscriptions in the corporation, is declaratory of the common law.
3.  Bankruptcy.—Under Ky. Stats., secs. 547, 568, a corporation's trustee in bankruptcy may recover from the stockholders their unpaid subscriptions.
4.  Bankruptcy.—In an action by a corporation's trustee in bankruptcy against a stockholder to recover his unpaid subscription, evidence held not to show that the defendant's subscription had been paid.

STRATTON & STEPHENSON for appellant.

MOORE & CHILDERS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant and defendant below Stoney Amick, subscribed for one-third of the capital stock of the Coal Run Mining Company, a corporation organized by him, H. H. Funk, and C. E. Steele on August 6, 1917, with a total capitalization of $9,000. Each of the three subscribed for stock of the value of $3,000, but Funk was the only one who put any money into the corporation, which began operation shortly after the articles were executed and duly recorded. It ran its mine in Pike county from that time until about the middle of 1923, when it was sus-

pended; but a mercantile business conducted in connection with the mine was continued until the time or about the time of the filing of this action by appellee and plaintiff below W. K. Elliott, who was appointed trustee in bankruptcy of the corporation upon a voluntary petition filed by defendant as its president on September 5, 1925, and in which petition he reported the assets of the corporation at slightly over $3,000 and its debts more than $3,600. Plaintiff, the trustee, realized from the assets a sum slightly in excess of $1,500 and after paying costs, attorney's fees and other expenses a small pro rata was adjudged to the creditors, leaving due them the aggregate sum of $2,866.87. This action was filed in the Pike circuit court by plaintiff, as trustee, against defendant as stockholder, to recover that balance due the creditors upon the grounds: (1) That he had never paid the amount of his subscription to the capital stock of the bankrupt corporation; and (2) that he was a stockholder, director, and president of the corporation, and that he wrongfully and unlawfully allowed himself to be paid by it the sum of $11,000 from the time it commenced under its charter until it suspended in 1923, and that the other two stockholders were paid like sums, under the guise and pretense that the amounts so paid represented profits to which the stockholders were entitled as dividends, when in truth and in fact no dividends were ever declared, nor were they earned. The answer put in issue the averments of the petition. Proof was taken, and the cause was heard by the court without a jury and upon the evidence introduced judgment was rendered against defendant for the amount prayed for in the petition; and to reverse it he prosecutes this appeal.

The record does not disclose upon which of the two grounds, supra, the court bottomed its judgment, but we are convinced that it was undoubtedly sustainable under ground (1) if not also under ground (2). It is a fundamental principle of the law concerning private corporations that a subscriber for stock therein must pay to it the amount of his subscription, and under section 568 of our statutes no stock may be issued to any subscriber therefor without such payment in money or its equivalent; and section 547 of the same statutes prescribes that stockholders "shall be liable to creditors for the full amount of the unpaid part of stock subscribed for by them." That provision of the statute was but declara-

tory of the common law on the subject and which right of creditors is universally recognized by all courts. If, therefore, defendant did not pay for the stock of the corporation that he agreed to take under his subscription, the plaintiff as his trustee in bankruptcy, as a legal representative of it and also of the creditors, is entitled to recover to the extent of such unpaid subscription, and which brings us to a review of the testimony upon that issue.

Defendant and Steele testified in the case, but Funk was dead at the time of the trial, and there were no objections to any of the testimony of the other two subscribers. They testified, in substance, that during the negotiations looking to the formation of the company and at the time it was incorporated neither of them had any money to put into the corporation or with which to pay for their subscribed stock, and that Funk agreed to and did pay into it after it was organized, not only the entire amount of its capital stock, including his own subscription of $3,000, but also an additional sum of $2,200 for the purpose of defraying running expenses and to furnish the equipment of the plant. They executed no notes to him for the amount of their subscriptions, and it is doubtful from the testimony if they ever agreed to repay him except out of assets in the way of earnings or profits of the corporation. No certificates of stock were issued to any one, and nowhere in the record do we find that they ever agreed to refund to him the amount of their subscription in the event of his inability to recoup it from assets of the corporation. The corporation kept no records, and no one has ever been able to find any minutes or proceedings of meetings of either stockholders or directors. It is true that defendant testified concerning meetings by the three stockholders as often as once each year, and that an indefinite sort of record was made on loose sheets of paper at those meetings, but he testified to no verification or certification of any such minutes, nor did he know whether they ever went into the possession of the proper custodian, who ordinarily is the secretary of the corporation.

Defendant testified that he was elected president, Steele was elected manager, and Funk secretary and treasurer of the corporation, but no record was exhibited showing any such elections, nor did either of the witnesses purport to give the contents of the minutes which

they claim were recorded in such loose and indefinite fashion. Defendant, in his testimony, was asked, and answered:

> "Q. Did the directors ever meet to declare dividends? A. Before any money was paid out, the directors came together and talked over their debts and kept enough money in the treasury to pay the debts, and the rest was paid to the stockholders."

After the corporation began business it appears that Funk in some manner not disclosed repaid himself the entire sum of $11,200 advanced by him, and which, it will be noted, included the amount of his own subscription. Just how and under what circumstances that was done is thus told by defendant:

> "Q. You do know that he (Funk) took every cent he put in it (the corporation) and paid himself back out of the company's money? A. Yes, sir; out of the earnings that should have gone to Mr. Steele and myself was turned over to Mr. Funk to pay him back.
>
> "Q. How do you know it was earnings? A. It was paid back pretty soon, and it must have been earnings.
>
> "Q. Must have been? A. Yes, sir.
>
> "Q. What do you base that on? A. On what the mines should have made from operating coal and from the money the mine had on deposit."

From that and other testimony in the case it is quite convincing that Funk as secretary and treasurer repaid himself the entire amount he advanced out of the assets of the corporation as soon as they came into existence and were available for that purpose. Clearly, therefore, the advancement made by Funk at the beginning of operations, and his subsequent repayment in the manner indicated, was, in effect, no more than the corporation borrowing from him the amount represented by his advancement and its subsequent payment of that debt to him, and it would be an anomaly in the law if he and his associated stockholders could be permitted to discharge their respective liability to the corporation as subscribers for stock in any such manner, whether the corporation was solvent or insolvent at the time of the payment of the advancement. The repayment to Funk in the manner

stated took out of the treasury of the corporation, not only the amount of its entire capital stock, but likewise the additional advancement by Funk of $2,200. Stockholders in all corporations could thus require the corporation to discharge their obligations and liabilities as subscribers to its stock if that method of payment were upheld.

If defendant and Steele had obligated themselves to Funk to absolutely refund to him the $3,000 advanced to each of them by him in payment of their subscriptions and they thereby became his debtors for such an amount, and which remained with the corporation, then the requirements of the law as to the payment of subscriptions would be satisfied, although the advancements might never be repaid. Likewise, if Funk was repaid with profits of the corporation to which defendant and Steele were entitled in the way of proper and legally declared dividends, their liability as subscribers for stock would be discharged. The record, however, discloses no such facts, and we are constrained to the conclusion that defendant failed to sustain his plea of payment of his stock subscription, and that he was properly adjudged to pay the amount for which judgment was rendered, it being less than the total amount of his unpaid subscription. Such conclusion renders it unnecessary to discuss, consider, or determine ground (2), supra.

Wherefore, the judgment is affirmed.