# Hatcher-Powers Shoe Company v. Hitchens.

(Decided December 10, 1929.)

WOODS, STEWART, NICKELL & SMOOT for appellant.

THEOBALD & THEOBALD for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

The Hatcher-Powers Shoe Company sued C. S. Hitchens upon a writing by which it was agreed that "the undersigned, in consideration of their mutual promises and agreements do severally agree to and with each other and with H. W. Hatcher, O. P. Powers and James Hatcher, the promoters of said corporation, that they will subscribe for and they do hereby severally subscribe for, the number of shares of capital stock of said company set opposite their respective names." It was alleged in the petition that prior to and in contemplation of the incorporation of the plaintiff company, the defendant together with other persons on or about the —— day of March, 1920, became a subscriber to the stock of plaintiff by signing the writing, which was set forth in full. Appropriate averments were made showing the completion of the corporation, its acceptance of the subscription contracts, calls for payment, and the launching of the enterprise upon its contemplated business career. The answer of defendant traversed the allegations of the petition. The formal steps in the process of forming the company were proven by uncontradicted evidence, and the ultimate issue between the litigants was whether defendant had executed the writing. The sufficiency of the incorporation, organization, and procedural steps as set out in the petition were before this court and settled in the case of Hatcher-Powers Shoe Co. v. Bickford et al., 212 Ky. 163, 278 S. W. 615, and need not be recited. The circuit court submitted the case to the jury and its verdict was for the defendant. The shoe company has prosceuted an appeal, insisting that it was entitled to a peremptory instruction, or, if not correct in that contention, that it should be granted a new trial because of errors of the court in instructing the jury and in admitting incompetent evidence.

The duty of the trial court respecting the request for a peremptory instruction depended upon the facts shown by the evidence upon the issue involved. If there was conflicting testimony upon the vital issue as to the

execution of the writing upon which the action was based, it was proper to submit that issue to the jury. But if there was an entire absence of evidence to sustain the defense of non est factum, there was nothing to submit to the jury, and a verdict should have been directed for the plaintiff as requested. The contention requires an examination of the evidence adduced. Harry W. Hatcher gave his deposition in this and about a score of companion cases some years before the trial. He testified that he took the subscription of Hitchens, who personally signed the written contract with a lead pencil. In the cross-examination counsel pressed the witness with particular emphasis on the matter and manner of executing the contract by Hitchens. Five days later Hatcher was recalled, and stated that after his previous testimony had been given, he had examined the original paper, and upon seeing it recalled that Hitchens had directed him to sign the paper for him and he had done so with a fountain pen. O. P. Powers testified that he was present on the occasion when Hitchens subscribed. He thought Hitchens signed the paper himself, but Hatcher was handling the transaction and the details were not clearly recalled. He was certain, however, that the paper was in their hands, and was the subject of the discussion; but the witness could not state positively which one signed it. He was pretty sure, however, that one or the other of them then signed it. In July, 1920, after calls for payment of a part of the subscription price had been made and after the corporation had begun business, Hitchens wrote Hatcher a letter in which he stated: "Upon my return after an absence of several weeks I found the enclosed letter from Mr. Barnett. Taking advantage of the agreement between us made at the time I subscribed for some of the stock, I will now cancel my subscription." The letter from Mr. Barnett was a notice of the call by the corporation for a payment on the subscription for stock. Hitchens testified that he never at any time subscribed for any stock in the Hatcher-Powers Shoe Company. Referring to Hatcher's testimony to the effect that he had signed the name of Hitchens by his authority, the witness stated that he did not sign the paper or give Hatcher any authority to sign it for him. But in relating the facts of the occurrence he said: "I told him he could put me down for a thousand dollars worth. That was really to get rid of him. He told me I could make my decision whether I wanted it or not."

This declaration was followed by a question whether the witness had signed the paper or authorized it to be signed, to which Hitchens responded. "Absolutely not." Referring to the letter he had written in July, 1920, and being asked to explain it, the defendant said: "The letter explains itself. I said: 'Taking advantage of the agreement between us made at the time I subscribed for some of the stock, I will now cancel my subscription.'" His counsel then addressed to him this question: "When you refer to subscription for stock, you mean when you told him you (sic) take a thousand dollars worth and make your decision later?" The defendant replied: "He said I didn't have to pay for the stock, didn't have to do anything about it, I didn't have to decide about it now. I wrote him I am making the decision that I didn't want it. I made the decision the first day, but I didn't want to tell him so." Again Hitchens said: "I don't know how to express it. We had an understanding that I could decide whether I would subscribe when they got ready for the money and when the call was made I notified him of my decision that I didn't want any stock." Hitchens also significantly stated that Hatcher insisted upon having his name for the help and influence it would afford in getting others to sign up for some stock. On cross-examination the witness denied saying in his direct examination that Hatcher could put him down for these shares and appealed to the reporter's notes for verification of his recollection. He then testified: "I meant that I didn't make a decision to take it, didn't make a subscription for any stock and didn't make a contract to take any stock; I agreed to make a decision. I allowed him to make a note or a memoranda of a thousand dollars worth of stock, on which I would make a decision whether or not I would take it when they called for the money." Being again asked his meaning, the defendant responded: "Certainly, I agreed for him to put me down for a thousand dollars worth of stock." We see no possible grounds for a difference of opinion among reasonable men as to the meaning and effect of the testimony as a whole. The denials and conclusions of the wtiness must be considered in the light of the facts stated by him. They are susceptible of but one construction, and the admission by the defendant of specific facts is not controverted by his denials of the effect of those admitted facts. When a fact is stated by a witness orally and in

a writing, in plain and unambiguous terms, and no mistake, fraud or inadvertence appears to account for it, and it is not contradicted, it must be accepted as established. The testimony shows conclusively that the defendant authorized the signing of his name to the contract, and there was not a scintilla of testimony to the contrary. It was therefore the duty of the court, when properly requested, to instruct the jury accordingly.

It is argued for the appellee that the appellant was not entitled to recover unless the subscription agreement was signed prior to the formation and organization of the corporation. The writing which is the basis of the action purports to have been executed on a blank date in March, 1920. In order to raise an issue as to the accuracy of that recital, it was indispensable that an attack thereon should be made by appropriate allegations in the pleading filed by the defendant. F. T. Gunther Grocery Co. v. Koll et al., 153 Ky. 446, 155 S. W. 1145.

Since that was not done, the evidence indicating that the contract was signed at a later date, although admitted without objection, was ineffective for any purpose. Wright v. Wheat, 224 Ky. 386, 6 S. W. (2d) 458. The sole defense relied upon in the appellant's answer was a traverse of the allegations of the petition and that pleading did not tender any issue as to the time the contract was made. The issue was whether it was made at any time. Lewis v. Durham, 205 Ky. 403, 265 S. W. 934; Edge v. Ott, 151 Ky. 672, 152 S. W. 764; Ins. Co. of North America v. Gore, 215 Ky. 487, 284 S. W. 1107. Proof of the execution of the writing, under the pleadings as they were framed by the parties, afforded conclusive evidence of the contract, including its date. Denny, Ex. v. Darragh, 212 Ky. 655. Moreover, the date of signing the contract, whether before or after the filing of the articles of incorporation and the organization of the company, was immaterial. The subsequent acceptance of the subscription by the corporation, and its engagement in the business for which it was created completed the contract, and rendered it irrevocable. 14 C. J. p. 507 et seq.; Twin Creek & Colemansville T. R. Co. v. Lancaster, 79 Ky. 552; Amick v. Elliott, 222 Ky. 753, 2 S. W. (2d) 367; Bullock v. F. & C. H. Turnpike Co., 85 Ky. 184, 3 S. W. 129; Chicago B. & M. Co. v. Peterson, 133 Ky. 596, 118 S. W. 384; Hatcher-Powers Shoe Co. v. Bickford, 212 Ky. 163, 278 S. W. 615; Stone v. Monticello Const. Co., 135 Ky. 659, 117 S.

W. 369, 40 L. R. A. (N. S.) 978, 21 Ann. Cas. 640. Cf. Builders' Duntile Co. v. Dunn Mfg. Co., 229 Ky. 569, 17 S. W. (2d) 715.

The judgment is reversed for a new trial, not inconsistent with this opinion.