## Kessler v. Liberty Insurance Bank.

(Decided May 20, 1932.)

DODD & DODD for appellant.

BATSON, CARY & WELCH for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER— Affirming.

On December 12, 1928, Mrs. Emma Kessler executed to the Liberty Insurance Bank a mortgage on a tract of land in Jefferson county securing the bank in extending credit to Albert Nisbet or herself, in the sum of $25,000. On March 22, 1929, she brought this action against the bank, alleging that the bank had then already extended all the credit to Albert Nisbet it intended to extend, or in fact at any time extended; that there was no consideration for the mortgage, and the sole reason why she signed it was that she was frightened by the statements of the officers of the bank that, unless she executed the paper, her nephew, Albert Nisbet, who at that time was ill at his home, would be immediately taken from his home and prosecuted for a crime and ultimately sent to the penitentiary, and that the mortgage was thus obtained from her by duress and the threat that the bank would

prosecute her nephew and send him to the penitentiary if the mortgage was not executed. The allegations of the petition were denied by the answer, proof was taken, and on final hearing the circuit court dismissed the petition. Mrs. Kessler appeals.

The facts are these: Albert Nisbet was a nephew of Mrs. Kessler. He became blind when he was fourteen years old. She sent him to school. He took a law course and became a lawyer. She looked upon him very much as her son. She gave him $20,000, of bonds which she had. He got into the stock business and was borrowing money from different banks in Louisville. She indorsed for him. Finally, on September 6, 1928, as the bank claims, she and he executed to the bank a writing guaranteeing the payment of all his indebtedness then to the bank or that might be afterwards created. The material part of this writing is in these words:

"Whereas, Albert Nisbet, hereinafter called 'the principal' desires to transact business with and procure credit from the Liberty Insurance Bank of Louisville, Kentucky, and may from time to time, by reason thereof be indebted to said Bank, $20,000.

"Now Therefore, for and in consideration of the promises and of One Dollar to the undersigned in hand paid by said Bank, the receipt of which is hereby acknoweldged, and for the purpose of inducing said Bank from time to time to extend credit to the principal, and for other valuable considerations, the undersigned, jointly and severally, hereby guarantee to said Bank, its successors or assigns, the payment, at maturity and wheresoever payable and also promptly thereupon at the banking house of said Bank, of all bills, notes, checks, drafts, acceptances, negotiable instruments and evidences of debt made, endorsed or discounted to or through said Bank by the principal and of all indebtednesses, obligations and liabilities, whether matured or unmatured, now existing or hereafter incurred, of the principal to said Bank, or to its successors or assigns, and likewise the payment to said Bank, its successors or assigns, of each and every such instrument, evidence of debt, indebtedness, obligation and liability, together with all expenses of, for or incidental to the collection of the same, including counsel fees."

Things then ran along until December 9, when Albert Nisbet had a stroke and became unconscious. The doctor would not allow anybody to speak to him on business. On December 11, one of the officers of the bank telephoned to Mrs. Kessler and asked her to come up to the bank the next morning. When she got there they showed her the paper, above quoted, and asked her to execute a mortgage securing the indebtedness. They say that she then admitted the execution of the paper. She says, when asked if it was her signature, ''Well it looks like mine, but I don't have any recollection of signing such a paper.'' On cross-examination, when asked to look at the paper and say whether it was her signature, she said, ''As I say, it looks like it, but I can't swear and I won't say that I ever signed a paper that long.''

After some talk she asked the bank to give her further time to decide what she would do. The officers said they would have a meeting of the directors at 2 o'clock, and that the matter must be fixed up before that time. She then went down to the trust company and got her deed, came back, and the mortgage was written, and she signed, acknowledged, and delivered it, and the bank executed to her the following writing:

''In consideration of One Dollar and other valuable considerations and in further consideration of the execution of the surety mortgage by Emma Kessler to the Liberty Bank & Trust Company, the said Liberty Bank & Trust Company does hereby agree to withhold any action or right of action which may exist against Albert Nisbet in favor of said Liberty Bank & Trust Company for a period of at least thirty days. (Signed) Liberty Bank & Trust Company by Walter L. Borgerding, December 8, 1928.''

She testified that one of the officers of the bank told her that, unless she signed the mortgage, they would put Albert Nisbet in the city hospital and send him to the penitentiary, and that this induced her to sign the paper. On the other hand, all the officers of the bank, and another person, who was present, swear that nothing of this sort was said, and the testimony for the defendant, by a number of witnesses, is to the effect that Mrs. Kessler knew that Albert Nisbet's affairs were in a bad shape and she did not want any publication in the newspapers about them while he was sick and unable to do anything, and

that she believed that when he got up he could straighten out things, and for this reason she executed the mortgage to keep things quiet. In Perry v. Thomas, 232 Ky. 783, 24 S. W. (2d) 603, 604, the rule applied in such cases is thus stated:

"The rule is well established in this, as well as nearly all other jurisdictions, that proof to sustain a reformation or cancellation of a duly executed writing must be clear and convincing. Trustees of the First Christian Church of Ft. Thomas v. Macht, 228 Ky. 628, 15 S. W. (2d) 509; Camp v. Kimbley, 188 Ky. 666, 223 S. W. 1005; Salyer v. Salyer, 141 Ky. 648, 133 S. W. 556. Where one sues for the cancellation of a deed on the ground that it was procured by fraud, the burden of proof is upon him to establish the facts alleged as the basis of his action, and he must prove his allegations by clear and convincing evidence. In other words, the fraud must be made clearly to appear and the proof must be convincing, not merely preponderating."

Mrs. Kessler is the only witness who testifies that anything was said about taking Albert Nisbet to the city hospital or prosecuting him. All the other parties who were present testify that nothing of this sort was said, and under the above rule the judgment of the chancellor cannot be disturbed on this ground.

The mortgage was not without consideration. On the execution of the mortgage the written agreement was signed by the bank agreeing to withhold any action or right of action against Albert Nisbet for a period of at least thirty days; this was a valuable consideration, and under the proof for the defendant was the real consideration inducing Mrs. Kessler to execute the mortgage.

The evidence does not show that any duress was exercised. Mrs. Kessler went to the bank about 10 o'clock. She returned to the bank with her deed about 12 o'clock, and, while the mortgage was being prepared, she had lunch, and executed the papers after she had eaten her lunch, and left the bank about 1 o'clock. She had plenty of time to think matters over. After the guaranty had been given in September, the bank had renewed for Nisbet four notes, aggregating $3,534.25, and on December 12, Nisbet was obligated to the bank in a total

of $19,523.55. The guaranty of September 6 was a guaranty "of all indebtednesses, obligations and liabilities, whether matured or unmatured, now existing or hereafter incurred," and the consideration of the contract was, not only the $1 in hand paid, but "for the purpose of inducing said bank from time to time to extend credit to the principal." The bank did extend credit on this paper, and clearly the mortgage was simply a security for the obligation incurred by the guaranty of September 6.

In such cases this court gives some weight to the finding of fact by the chancellor, for the reason that he is on the ground and had more or less knowledge of local conditions and the witnesses. Under this rule and the facts shown, the judgment of the chancellor here cannot be disturbed.

Judgment affirmed.