HULDA ROHRSCHNEIDER, Appellant, *v.* THE KNICKER–
BOCKER LIFE INSURANCE COMPANY, Respondent.

*Defendant,* in order to induce people to insure with it, caused advertise-
ments to be published and pamphlets to be issued, stating, in substance,
that it insured at half the cost in other companies, as one-half of the
premiums could be paid in premium notes, and its dividends always
had, and would pay the notes. The dividends, as defendant's managers
well knew, never had paid the premium notes, and generally would
fall much short of doing so. Plaintiff read some of the advertisements,
and received one of the pamphlets from an agent of defendant; and,
relying on these and other representations, took an endowment pol-
icy for $500, payable at her death, or at the end of five years if she
should be then living. During the five years she paid one-half the
premiums in cash and gave her notes for the other half; at the end of
each year, the note of the previous year was included in the new note.
But one small dividend was made during the five years. At the end of
the five years she demanded the $500, but defendant would only pay
the difference between that sum and the amount of the last note. *Held,*
that an action for fraud was maintainable, as there was a false represen-
tation of a specific fact material to the transaction; and that plaintiff was
not estopped, by allowing the contract to run to maturity, from assert-
ing the fraud, as there were no means of discovering it prior to that time.
It *seems,* that the measure of recovery in such an action would be, at least,
the cash paid upon the policy, with interest from time of payment.

(Argued April 8, 1878; re-argument ordered, and case submitted,
January 28, 1879; decided February 18, 1879.)

APPEAL from judgment of the General Term of the
Supreme Court, in the second judicial department, affirming
a judgment in favor of defendant, entered upon an order
nonsuiting plaintiff on trial.

The action was brought to recover damages for alleged
fraud.

The facts appear sufficiently in the opinion.

*Henry Wehle,* for appellant.    Plaintiff had a cause of
action, resulting from fraud and false representations, and
was entitled to damages, independent of the question whether
she had rescinded the contract or not. (Kerr on Fraud or
Mistake, 110, 330; Bliss on Life Insurance, 462; *Haight* v.

*Hoyt,* 19 N. Y., 472; *Lisnar* v. *Canady,* 53 id., 298; *Minturn* v. *Main,* 7 id., 220; *Hubbard* v. *Briggs,* 31 id., 518; *Moore* v. *Rand,* 60 id., 208; Gardiner, J., in *Whitney* v. *Allaire,* 1 id., 311; *White* v. *Merritt,* 7 id., 356; *Cohl* v. *Hatfield,* 46 id., 535; *Lindsley* v. *Ferguson,* 49 id., 625; *Northrop* v. *Hill,* 57 id., 354; *Hammond* v. *Pennock,* 61 id., 155; *King* v. *Fitch,* 2 Abb. Ct. of App., 508; *Nichols* v. *Mickels,* 23 id., 264; *Baker* v. *Spencer,* 47 id., 562; *Allerton* v. *Allerton,* 50 id., 670.) Plaintiff has rescinded the contract by returning the policy, which was all she received, on discovering the fraud; she did all that was in her power. (*People* v. *Stephens,* 71 id., 553; *Hammond* v. *Pennock,* 61 id., 153; *Masson* v. *Bovet,* 1 Den., 69; Kerr on Law of Fraud, 330; *White* v. *Merritt,* 7 N. Y., 352; *Whitney* v. *Allaire,* 1 id., 305.)

*Samuel Hand,* for respondent. Plaintiff by retaining the policy and acting under it was bound to abide by its terms. (*Kirkland* v. *Dinsmore,* 2 Hun, 50; Am. Law Reg., Nov., 1865, p. 10; *Breese* v. *U. S. Telegraph Co.,* 48 N. Y., 132; *Chapman* v. *Rose,* 56 id., 137; *Phillip* v. *Gallant,* 3 N. Y. Sup. Ct. [T. & C.], 618; *Empire State Life Ins. Co.* v. *Beckwith,* 5 Hun, 122.) The contract having completely matured before plaintiff attempted to rescind, a rescission could not take place. (*Franklin* v. *Miller,* 4 Ade. & Ell.; 599; *Hunt* v. *Silk,* 5 East, 449; *Wheaton* v. *Baker,* 14 Barb., 594; *Cobb* v. *Hatfield,* 46 N. Y., 533; *Bedell* v. *Bedell,* 3 Hun, 580; 2 Parsons on Contracts, 191; *Ely* v. *Mumford,* 47 Barb., 632; *Baker* v. *Robbins,* 2 Den., 130; *Fisher* v. *Conant,* 3 E. D. Smith, 199; *Wheaton* v. *Baker,* 14 Barb., 594.)

*Per Curiam.* Upon the former hearing of this cause, an obscure but very material interlineation in the printed case was overlooked, and we were thus led into error. We have reconsidered the case, and, by reading the evidence as corrected by the interlineation, have reached a different conclusion.

In 1867, and prior thereto, the defendant caused certain advertisements to be published in German newspapers, printed in the city of New York, and also caused German pamphlets to be published and circulated, for the purpose of inducing German speaking people to insure with it. Among other things, it was represented in the advertisements and pamphlets that a person could get as much insurance in this company as in any other with half the money ; and it was explained that this could be achieved in this way : one-half of the premiums could be paid in cash, and the other half in premium notes which would never have to be paid, as the dividends of the company always had and would pay such notes. The plaintiff claims that she read some of these advertisements, and that one of the pamphlets was given to her by an authorized agent of the defendant ; and that in reliance upon these and other representations, she took an endowment policy, dated February 11, 1867, from the defendant, insuring her life for $500, payable at her death, or at the end of five years, if she should then be living. During the five years, she paid in cash one-half of the stipulated premiums, and gave her notes for the other half. As we understand the evidence, at the end of each year the note of the prior year was included with the amount for that year, and the last note given by her was for $305. This was given at the commencement of the fifth year, and was for the whole amount of the annual premiums not paid in cash, less a dividend of ten dollars, which had been applied. In addition to this note, she had paid in cash about $389. At the end of the five years, when she went to the defendant to claim the $500 insured, it offered her only $195, the difference between the $500 and the amount of her note. She refused to take that sum, and then commenced this action, to recover damages for the fraud which she claimed had been practiced upon her.

The fraud was really undisputed. The managers of the defendant had made the false representations, and they knew them to be false, as the dividends of the company never had

paid the notes thus given for the one-half of the annual premiums. But, on the contrary, such dividends had always fallen far short of making such payments ; and they must have known that they generally, if not always would fall short. There was, in fact, no foundation or excuse whatever for making the untrue representations. Upon this policy, the only dividend, during the whole five years, was ten dollars.

It is said, on behalf of the defendant, that the plaintiff did not rely upon these representations, and was not induced by them to take the policy. But there was sufficient evidence from which the jury could have found that she did thus rely and was thus induced ; and as she was nonsuited, this branch of her case must be assumed here to have been established.

It cannot be doubted that this was an actionable fraud. It was not like the usual commendation of his own which one may make with impunity when engaged in trade or traffic. It was the representation of a specific fact quite material to the transaction.

But the plaintiff was defeated in the Supreme Court, on the ground that she had so far acted upon her contract with the defendant and ratified it that she was estopped, after the policy had run to maturity, from claiming anything on account of the fraud. We cannot agree to this. She did not discover the fraud, and so far as we can perceive, had no means of discovering it, during the five years. She was bound to give the notes, but was assured that the dividends would pay them. After she gave the notes, she had no occasion to look after them. She could rest upon the representations made to her. The defendant had the whole five years to make good the representations ; and the first time she could expect to learn their falsity was when she went to demand the $500. When she made such demand, and learned that her note had not been paid by the dividends, she asserted the fraud. It is impossible, therefore, to perceive upon what theory it can be said that she waived or lost any right to assert this fraud against the defendant.

She was, therefore, entitled to recover something in this action; and upon the facts disclosed, the measure of her recovery would be, at least, the cash paid by her upon the policy, with interest from the time of the payments.

The judgment must, therefore, be reversed, and a new trial granted, costs to abide event.

All concur.

Judgment reversed.