EDWARD PERRY, APPELLEE, v. CHARLES MEYER, JR., APPELLANT.

CHARLES MEYER, JR., APPELLANT, v. EDWARD PERRY, APPELLEE.

FILED MAY 15, 1923. No. 22385.

1. **Contracts:** RESCISSION. The principal relief to be effected by a rescission of a contract is to place the parties in substantially the same condition as they were in prior to the making of the contract. It is incumbent upon one seeking the rescission of a contract, where the parties cannot be placed in *statu quo,* to furnish to the court such evidence that it can do equity between the parties.

2. **Vendor and Purchaser:** RESCISSION. "Where, with knowledge of all the facts on which a rescission of a contract for the sale of land may be based, the vendee does some act which prevents him from placing the vendor in *statu quo* he cannot claim a rescission of the contract." *Stewart v. Tate,* 103 Neb. 28.

APPEAL from the district court for Wayne county: ANSON A WELCH, JUDGE. *Affirmed.*

*W. K. Amick,* for appellant.

*A. R. Davis* and *C. H. Hendrickson, contra.*

Heard before MORRISSEY, C. J., ROSE, ALDRICH and GOOD, JJ., BEGLEY, District Judge.

GOOD, J.

Edward Perry commenced an action against Charles

Meyer, Jr., to foreclose a real estate mortgage, given to secure a part of the purchase price of 365 acres of land sold and conveyed by Perry to Meyer. Charles Meyer, Jr., commenced an action against Edward Perry to rescind the contract of sale of said land and for a cancelation of the mortgage on the ground that a merchant-able title to the land had not been furnished. The two actions were consolidated and tried together, resulting in a decree foreclosing the mortgage and a dismissal of the cross-action for a rescission of the contract and cancelation of the mortgage. Charles Meyer, Jr., has appealed. Hereafter in this opinion Edward Perry will be referred to as plaintiff and Charles Meyer, Jr., as defendant.

On July 26, 1919, the parties entered into a written contract which provided that plaintiff would, on March 1, 1920, furnish a good and sufficient abstract of title and warranty deed to the 365 acres of land, and that defendant would pay therefor the sum of $135,375, of which $5,000 was to be paid in cash, and on March 1, 1920, the further sum of $25,000 was to be paid and a mortgage given on the land to secure the sum of $105,375. When March 1, 1920, arrived, plaintiff was not able to furnish a merchantable title to the land, but both parties were desirous of carrying out the contract. It was then arranged that plaintiff would, not later than November 1, 1920, perfect title to the land and furnish abstract showing merchantable title, and he then gave to the defendant a bond in the sum of $10,000, with surety, that title would be perfected, and that defendant should be held harmless from all loss, expense and damage by reason of said title being defective. Thereupon plaintiff delivered a warranty deed and possession of the lands to the defendant, who then paid the $25,000 of the purchase price then due, and executed and delivered to plaintiff a mortgage for $105,375.

The record shows that plaintiff immediately took steps to correct the defects in the title which had been pointed

out by counsel for defendant, and, among other things, an action to quiet title was prosecuted in the name of defendant, who verified the petition and signed the affidavit for service by publication, which action was prosecuted to a final decree, quieting the title in the name of the plaintiff in that action, the defendant herein. Apparently, when all of the defects which had been pointed out by counsel for defendant had been, or were about to be, fully complied with, defendant discharged his attorney and employed others, who in turn examined the abstracts and pointed out some additional defects. Plaintiff then attempted to comply with these requirements, and, apparently when the defects were about to be removed so as to satisfy defendant's counsel, defendant again discharged his counsel, employed still another, who declared the title not merchantable, and demanded a rescission of the contract. Plaintiff began the action of foreclosure on the 3d day of March, 1920, and defendant began the action for rescission a few days later. The record shows that defendant had been in possession of the lands for a little more than a year and received the rents, profits and income therefrom; that he had cut and manufactured into lumber a considerable quantity of timber, which was growing upon the premises, and had removed therefrom certain fence posts, gates, wires and other material.

Defendant alleges in his cross-petition that on the 1st of March, 1920, he was induced to accept a deed to the premises, make the cash payment of $25,000 and execute a mortgage for the remainder of the purchase price of the premises, upon the promise and representation of the plaintiff that he would, not later than November 1, 1920, perfect title to the land so as to make it marketable, and in the event of failure so to do, he would cancel the sale contract. While the evidence on this question is conflicting, the trial court found against defendant on this proposition, and from a careful examination of the

Perry v. Meyer.

evidence we are of the opinion that the finding is supported by a preponderance of the evidence.

The trial court made elaborate findings as to each of the defects alleged to exist in the title, and found against defendant on each and every one of them, and that a good, merchantable title to the whole premises was vested in the defendant; and further found that the real estate in question had decreased in value to the extent of 30 per cent., and that the final objections by defendant to the title are technical and unsubstantial, and not such as would cause an ordinarily prudent man, desiring to purchase land and acquire title thereto, to entertain a just apprehension of future trouble therefrom, and that the objections to title were not for the purpose of having plaintiff perfect title, but were made in order to enable defendant to claim grounds for rescission of the contract, and for a recovery of the part purchase price paid, and to avoid liability for the balance of the purchase price remaining unpaid. The court also found that, by reason of the cutting of the timber and the removal of material from the premises, the parties could not be placed in *statu quo,* and for that reason the defendant was not entitled to a rescission of the contract.

We have examined the record and find that most, if not all, of the objections to the title are not substantial or meritorious, and some are positively frivolous. We do not deem it necessary, however, to consider the objections in detail, because we are of opinion that defendant is not in a position to demand a rescission of the contract.

1. It is a general and well-established rule that there can be no rescission of a contract unless the parties can be placed in *statu quo* or substantially so. *Bell v. Keepers,* 39 Kan. 105; *Mather v. Barnes, Keighley & Greer,* 146 Fed. 1000; *Carlton v. Hulett,* 49 Minn. 308; *Whitlock v. Denlinger,* 59 Ill. 96; *Vaughn v. Smith,* 34 Or. 54; 39 Cyc. 1423. The principal relief effected by rescission is to place the parties in the same condition as they were in before the making of the contract sought to

be rescinded. It is incumbent upon one seeking the rescission of a contract, where the parties cannot be placed in *statu quo,* to furnish to the court such evidence that it can do equity between the parties. The record in this case shows that defendant received the rents, income and use of the 365 acres for one year. It shows that he cut and removed a large number of trees and removed from the land gates, fence posts and wires, but there is not one scintilla of evidence in the record to show what was the value of the use and occupation of the land, or of the timber cut, or of the materials removed from the premises. Defendant failed to furnish the court with any evidence by which it could determine the amount that defendant should be charged as an equivalent for the things received by him, and do justice and equity.

2. The record discloses that, after defendant knew of the defects in the title of which he complains, he continued to cut timber and convert it into lumber. This is an act inconsistent with a right to rescind. "Where, with knowledge of all the facts on which a rescission of a contract for the sale of land may be based, the vendee does some act which prevents him from placing the vendor in *statu quo* he cannot claim a rescission of the contract." *Stewart v. Tate,* 103 Neb. 28.

The fact that after defendant knew there were defects in the title he consented to accept a deed and went into possession of the land, and at the same time took a bond from the plaintiff to indemnify him and hold him harmless from all loss, expenses and damage by reason of said title being defective, clearly indicates a purpose to accept the title and rely upon an action upon the bond for damages, in the event that title was not perfected according to the contract.

We are clearly of the opinion that defendant was not entitled to a rescission of the contract, and it therefore follows that the decree of the district court in denying

a rescission and awarding foreclosure of the mortgage is right, and it is therefore

AFFIRMED.