SMITH, State Superintendent of Banks, Respondent, v.
KEENER, Appellant.

(222 N. W. 485.)

(File No. 6397. Opinion filed December 20, 1928.)

See, also, 212 N. W. 498.

*H. G. Giddings,* of Mitchell, for Appellant

*Roscoe Satterlee,* of Mitchell, and *Roy E. Willy,* of Sioux Falls, for Respondent.

MORIARTY, C.   The Citizens' Bank of Letcher, a state bank, was declared insolvent by the superintendent of banks, and on April 26, 1924, was taken in charge for liquidation.   For several years prior to the closing of the bank, the defendant, Keener, had been assistant cashier of said bank and a member of its board of directors.

During practically all the time that the defendant was so connected with said bank he had been making occasional purchases of notes, which the bank had taken on loans to its customers.   These notes were paid for by charging the amounts of the face of each note and the accrued interest against the defendant's checking account in the bank; but on the trial of this action defendant testified that the funds in this account belonged partly to himself and partly to his wife.

Between March 13, 1924, and the date on which said bank closed, the defendant purchased 16 notes from the bank, paying for them in the manner above stated.   The superintendent of banks brought this action to recover said notes or their value, alleging that during all the period within which said notes were purchased said bank was insolvent, that the defendant knew of its insolvent condition and purchased said notes, charging them against his checking account in the bank, for the purpose of securing a preference over other creditors of the bank.

The case was tried to the court, and the trial court found the facts to be substantially as alleged in the complaint, and that the value of the notes purchased from the bank by the defendant amounted in the aggregate to $3,336.18.   The notes so purchased were transferred by the defendant to his wife, who took them to Iowa, and said notes were not within the jurisdiction of the court at the time of the trial.

From these findings the court made its conclusion that the purchase of the notes by the defendant was a fraud upon the bank and its other creditors, and that the plaintiff was entitled to have the transfer set aside, and the notes, or their value, restored to the assets of the bank.   These findings are supported by substantial evidence, and they justify the trial court's conclusion that the plain-

tiff is entitled to a rescission of the transfer of the notes to the defendant.

But, in addition to the findings above mentioned, the trial court found that during the period between March 13, 1924, and April 22, 1924, the defendant had on deposit in the bank sums of money exceeding $3,675.77, and that, by the purchase of the notes in controversy, he secured a fraudulent preference in an amount equal to the full value of said notes, and the court entered a money judgment against the defendant in the sum of $3,375.80, the value of the notes and accrued interest thereon to the date of judgment. From this judgment, and an order denying a new trial, the defendant appeals.

The evidence shown by the record, in so far as it affects the amount of fraudulent preference which defendant secured, is as follows: On March 13, 1924, defendant's credit balance in the bank, brought forward from March 11, was $411.94. When the bank closed his credit balance was $14.64. During the period between those dates, defendant credited himself with numerous deposits, which he testified were funds derived from the collection of notes which he had purchased from the bank at various dates prior to March 13, 1924. After these credits were made to his account, and usually almost immediately thereafter, his account was debited with the face value and accrued interest on one or more of the notes in controversy herein. By these transactions defendant's balance was usually kept at a low amount. The highest credit balances shown at any time during the period involved in this case were $1,171.09 at the close of business on March 13, and $1,066.81 at the close of business on March 20, and neither of these balances stood at such amounts more than one day.

The trial court's finding that defendant had on deposit sums of money in excess of $3,675.77 is based upon the aggregate of all the deposits the defendant made during the period involved. The record does not support this finding, or the conclusion that defendant secured a preference in the sum of $3,775.80 by these transactions.

If, on March 13, 1924, defendant knew the bank was insolvent, the only ways in which he could secure a fraudulent preference would be by exhausting his credit balance, or by taking over property of the bank for a fraudulent or insufficient consider-

ation. No one could secure any such preference by purchasing notes from the bank for an adequate consideration. The defendant did secure a preference to the extent of the amount by which he reduced his credit balance of $411.94, on the opening of business on March 13, when he is first charged with knowing that the bank was insolvent, to the sum of $14.64, when the bank was closed. There is no evidence whatever to show that any credit to defendant's account during the period involved was fraudulent, that he had any knowledge of the bank's insolvency prior to March 13, 1924, or that any of the notes from which the funds credited to his account were derived were not purchased for an adequate consideration. It is true that no one engaged in the management of a bank should be allowed to select paper for himself from the assets of the bank, but this is an action to rescind transfers as fraudulent.

█ Granting that they were fraudulent, and that the plaintiff has the right of rescission, the rule is that the party rescinding must restore the consideration. Revised Code of 1919, § 906; Sullivan v. Bromley, 26 S. D. 147, 128 N. W. 586; Masson v. Bovet, 1 Denio (N. Y.) 69, 43 Am. Dec. 651; Northwestern M. & H. Ins. Co. v. Fleming, 12 S. D. 36, 80 N. W. 147; 13 C. J. "Contracts," § 680; Messenbrink v. Bliesman, 204 Iowa, 223, 215 N. W. 232; Rott v. Goldman, 236 Mich. 261, 210 N. W. 335; Advance-Rumely Co. v. Bartzat, 114 Neb. 35, 206 N. W. 7; Rokusek v. Nat. Fire Ins. Co., 50 N. D. 123, 195 N. W. 300; Mueller v. Michels, 184 Wis. 324, 197 N. W. 201, 199 N. W. 380; Stotts v. Fairfield, 163 Iowa, 726, 145 N. W. 61. One seeking rescission must furnish evidence to enable the court to do equity, where status quo cannot be restored. Perry v. Meyer, 110 Neb. 347, 193 N. W. 717.

█ In the instant case the trial court had before it no evidence that the defendant did not deposit funds sufficient to constitute full and fair consideration for the notes involved herein, except in so far as the reduction of his credit balance from $411.94 to $14.64 was applied on the purchase price of said notes.

For the reason stated, the judgment and order appealed from are reversed, and the case remanded for further proceedings in accordance with this opinion.

BURCH, P. J., concurs specially.

POLLEY, SHERWOOD, CAMPBELL, and BROWN, JJ., concur.

32

BURCH, P. J. (concurring specially). I agree with Commissioner MORIARTY'S opinion that the action should be reversed for the reasons set forth, but do not think the evidence shows an unlawful preference in any amount.