[Civ. No. 5447.   Third Appellate District.—March 19, 1936.]

H. A. McCRAY et al., Appellants, v. TITLE INSURANCE AND TRUST COMPANY (a Corporation) et al., Respondents.

Henry G. Bodkin for Appellants.

Chapman & Chapman and Call & Murphey for Respondents.

THE COURT.—This action was brought for the purposes of securing the rescission of a contract for the sale of a lot on one of the beaches of Los Angeles County, upon the ground of fraudulent representations. The trial court found for defendants on all issues, and refused to grant a rescission, and plaintiffs now appeal from the judgment.

Of the twelve points urged for reversal of the judgment, nine are based upon the insufficiency of the evidence to support the findings. Two of such points are listed under errors of law, but in effect, they also attack the findings upon the ground of insufficiency. The other point is based upon error in giving judgment for defendants, and in refusing plaintiffs' motion for new trial. It is a fair statement to say that the entire attack made upon the judgment arises out of the insufficiency of the evidence.

One of the defenses set up in the answer was that plaintiffs were barred by their laches from rescinding the transaction, and we shall first dispose of that issue of fact.

Section 1691 of the Civil Code requires the party entitled to rescind "to rescind promptly, upon discovering the facts which entitle him to rescind". Whether or not the defrauded party has rescinded "promptly" will depend upon all the circumstances of the particular case, and is, of course, a question primarily for the trial court. (*French* v. *Freeman,* 191 Cal. 579 [217 Pac. 515, 519].) "As held generally, the question of the existence of laches is one to be determined primarily by, and must be left largely to the trial court." (*Akers* v. *Hufford,* 128 Cal. App. 146 [16 Pac. (2d) 802].) "The question of laches is, in the first instance, largely one for the determination of the trial court, and its conclusion will not be set aside by an appellate court if it finds reasonable support in the evidence." (*McMahon* v. *Grimes,* 206 Cal. 526 [275 Pac. 440], citing numerous cases.) Is there sufficient evidence in the record to justify the finding that plaintiffs failed to rescind promptly? We believe that

an inquiry into the factual structure of the case must lead to an affirmative answer.

On July 10, 1929, plaintiffs and defendant, Title Insurance and Trust Company, entered into a written contract, whereby the former agreed to purchase, and the latter agreed to sell, a lot on the beach of the Pacific ocean in Los Angeles County. The property lies between the state highway and the beach, the rear line being bounded by the highway. The description of the lot gives a width of 30 feet. There is no definite length to the lot in number of feet, it being described as ''lying between the center line of the Malibu Road . . . and the ordinary high-tide line of the Pacific Ocean''. Prior to the date of the sale to plaintiffs, the owners of the tract had erected a number of groynes along the beach. According to the testimony of the one the engineers a ''groyne'' is defined by the engineering department as a steel framework extending into the ocean to increase the beach and make it broader. There were four groynes along the beach where this lot is situated, varying in length from 151 feet to 202 feet. Although plaintiffs rely upon a number of representations made prior to the execution of the contract, they all arise out of the statement made by the seller as to the effect of the groynes in increasing the length of the lot. Plaintiffs testified that the seller represented to them that the effect of the groynes would be to increase the depth of the lots to between 200 and 300 feet. It may be pointed out that when the lots were purchased, the distance from the rear line of the lot to the high-tide line was some 80 or 85 feet. Thus, if the groynes had the effect which it is contended the seller represented, the lot would increase in depth over two to three times.

The finding of fact upon laches arising out of failure to rescind promptly upon discovery of the facts which are the basis of the foregoing representation is as follows: ''The court finds that plaintiffs did become fully aware of the fact that the lot which they had contracted to purchase on July 10, 1929, was not being appreciably built up or increased in depth as the result of the maintenance of said groynes or otherwise, at least within one year from said date, but nevertheless they made no complaint and took no action toward rescinding or otherwise seeking redress for more than two years thereafter. On the contrary, the court finds that in

truth and in fact while said groynes did tend to stabilize the shore, they did not have the effect of building up or adding to the depth of the lot in any appreciable degree, and the fact that they did not have that effect and would not build up said lot became evident at least within a year after plaintiffs contracted to purchase their said lot, and after knowledge of the misrepresentations of fact concerning the effect of said groynes as hereinbefore found, they affirmed said contract by making payments upon said contract and exercising acts of dominion over said property for a period of more than two years after becoming aware of any right that they may have had to rescind as hereinafter more particularly found.''

We believe there is substantial evidence in the record to support the foregoing finding. Plaintiff, W. D. McCray (brother of plaintiff, H. A. McCray), had long been familiar with this beach property. He and his brother had been in the paving business and had lived at the beach during several months, while engaged in building roads along the shoreline of the ocean. He visited the lot a number of times after the purchase was made. There is evidence to the effect that during the period of three years which lapsed from the date of contract to time of rescission, these groynes did not cause the lot to be lengthened. Witness Gillern had lived on this beach and in the vicinity of this lot since 1924. He testified: ''I have not observed any building up of the beach at all since the groynes were put in there. . . . the beach down there around lot 42 is in substantially the same condition that it was in July, 1929. There has not been any addition to the beach at all in building up, nor has the height of the beach been built up during that period, and as I remember the condition at both times, the beach is approximately on the same plane as it was in July 1929.'' The finding that there has been ''a serious depression in the value of real property generally throughout the country, and which has accordingly depreciated the market value of the property involved in this case'', is unchallenged. Thus, the delay of over two years in rescinding was prejudicial to defendants. As it is aptly stated by Black in his work on ''Rescission'' second edition, volume 2, section 545: ''Thus, for example, a purchaser of real property who might rescind the sale for fraud or other causes, and who knows his rights, cannot

be allowed to wait until the land has greatly depreciated in value and then have the aid of the courts to vacate the sale.'' Summarizing the foregoing, it appears that plaintiffs were business men who had had experience in road construction, and who knew this particular beach before the date of the contract; they had visited the lot a number of times after the purchase; during all this time there had been no accretion by reason of the effect of the groynes, and this must have been known to them, as obviously apparent. The value of the lot during said period had seriously depreciated. With such facts and others in the record before us, we hold that the trial court was justified in finding that plaintiffs had waited too long to rescind, and that the right of action here asserted was barred by laches.

Assuming that there was an undue lapse of time in discovering the facts upon which the rescission is predicated, appellants earnestly contend that under section 1691 of the Civil Code, this long interval is immaterial, as they did not learn from counsel that they had a right to rescind until several months prior to the commencement of the action. It is true that the statute provides that in addition to ''discovering the facts'', the injured party must be ''aware of his right to rescind''. This does not mean, however, that after discovering the facts, the injured party may delay indefinitely the ascertaining the nature of his rights arising out of those facts. Appellants rely upon the case of *Hannah* v. *Steinman*, 159 Cal. 142 [112 Pac. 1094]. In the later case of *Bancroft* v. *Woodward*, 183 Cal. 99 [190 Pac. 445], it is said, in respect to this contention: ''It is at least intimated in *Ruhl* v. *Mott*, 120 Cal. 668, 679 [53 Pac. 304], and *Hannah* v. *Steinman*, 159 Cal. 142 [112 Pac. 1094], that the rule is the same in regard to the time as to which he will be charged with knowledge of his right, as it is in regard to the time as to which he will be charged with a discovery of the facts which give him the right, and the reason for this is so plain that we have no hesitation in declaring it to be the case.'' Again, in the Bancroft case, the following language appears: ''Where, as here, a party claims to have been defrauded, and to have been injured thereby very substantially, any reasonable diligence at all would require of him that he proceed promptly to ascertain what his legal rights were.'' In the instant case, in view of all the facts and circumstances sur-

542

rounding the transaction, and particularly of the fact that the delay was prejudicial to the seller, the trial court was justified in finding that not only was there a failure to act promptly in attempting to rescind after discovery of the facts, but also in the ascertainment of plaintiffs' rights after such discovery of the facts.

We deem it unnecessary to discuss the other points urged by appellants, as they have lost all rights they might have to any relief.

The judgment is affirmed.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 18, 1936.