LIFE BENEFIT, INC., Appellant, v. ELFRING, Respondent
(7 N. W.2d 133.)
(File No. 8542.   Opinion filed December 17, 1942.)

**Max Royhl** and **George E. Longstaff,** both of Huron, for Appellant.

**Edward P. Gribbin,** of Watertown, for Respondent.

SMITH, J.   The assignments of error challenge the validity of a policy insuring the life of Veronica Elfring on the grounds of breach of warranty and fraud.   The trial court sustained the policy and entered judgment for the beneficiary thereof for the amount of the insurance.

■■    The period within which the company could have contested the policy for breach of warranty, untainted by fraud, had elapsed prior to the death of the insured. The statutes which control the operations of the company, a mutual assessment life insurance corporation, among other things provide:   "Every such corporation or association shall provide by its by-laws that every life policy or certificate issued by it shall be incontestable except for fraud, or nonpayment of dues or assessments, after it shall have been in force during the life time of the insured for two years from its date, provided that the policy or certificate may provide for restrictions of liability by reason of travel, occupation, change of residence and suicide.   These restrictions, except such as refer to military and naval service in time of war, must be applicable only to cases where the act of

the insured provided against occurs within two years after the issuance of the policy." This language was in force at the time the policy was delivered as Section 4, Chapter 133, Laws of 1935, and with slight revision appears as SDC 31.1911. The by-laws of the company and the policy delivered were drafted in compliance with the quoted provision of statute. The policy was dated on April 20, 1938 and the insured died more than two years thereafter on May 3, 1941. The provision is valid, 29 Am. Jur. § 881, and after the prescribed period has elapsed the validity of a legal policy cannot be disputed on any other than the excepted ground of fraud. 1 Appleman Insurance Law and Practice, § 331. A fraudulent warranty falls within the exception, and the right to contest the validity of the policy for such fraud continues after the statutory period has elapsed. See Combs v. Burbank Mutual Life & Benefit Ass'n., 140 Cal. App. 139, 35 P.2d 132.

The undisputed facts, which according to the company impel an inference of fraud, are these: The insured, a woman in the middle forties, was examined by physicians in 1937 resulting in the discovery of a lump in one of her breasts. The diagnosis was cancer. In November of 1937 the breast was removed and the diagnosis was confirmed by laboratory tests. The doctors testified that they did not communicate the diagnosis to her. No other testimony was offered tending to disprove her knowledge of the fact. Subsequent to the operation, according to the testimony of the beneficiary husband, she seemed in good health. In April following the November operation she made application in writing for the policy in issue. Her answers to specific questions were written down by a soliciting agent of the company. The completed application was signed by the insured and became a part of the policy. In a signed receipt for the policy she stated that the answers contained in the application were correct. The cause of her death, which as indicated occurred in May, 1941, was diagnosed as cancer of the liver. This diagnosis was not confirmed by laboratory tests. Medical testimony related the disorder of the

liver to that of the breast. The questions and answers upon which the company predicates its contentions are as follows:

"10. Do you now have or have you had? Tuberculosis, Cancer, Fainting Spells, Dizziness, Mental Disorders, Diseases of Brain or Nervous System, Convulsions, Apoplexy, Paralysis, Epilepsy, Rheumatism, Neuritis, Brights Disease, Skin Disease, Diabetes, Pleurisy, Hay Fever, Asthma, Rectual Fistula, Goiter, Pneumonia, Tumor, Venereal Disease, Heart Disease, Appendicitis, Ulcer of stomach or intestines, Liver trouble, Gall Stones, Hernia, Anemia, High blood pressure, Impairment of Sight or Hearing, Deformities, or any other serious illness or ailment? No."

"11. Have you ever consulted or been treated for any ailment not included in your above answers? No."

"12. Have you ever had a surgical operation? abscess lanced."

"15. Have you consulted a physician or practitioner or been in poor health during the past five years? Yes."

"20. If answer is YES to any of the above questions explain fully or attach explanation (Dates, Doctors, Causes, and Results) Nov. 26, 1936 Dr. Bartron operation successful very good."

Actual fraud, which renders a contract voidable, SDC 10.0302 is defined by our statutes, SDC 10.0307, as "any of the following acts committed by a party to the contract, or with his connivance, with intent to deceive another party thereto or to induce him to enter into the contract:

"(1) The suggestion as a fact of that which is not true by one who does not believe it to be true;

"(2) The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believe it to be true;

"(3) The suppression of that which is true by one having knowledge or belief of the fact;

"(4) A promise made without any intention of performing it; or

"(5) Any other act fitted to deceive."

■ If it be established that the consent of one party to a contract would not have been given except for the fraud of the other party, the resulting contract may be avoided. SDC 10.0303, 10.0304, 31.0506, 31.0508, 31.0512, 31.0517, and 31.0518. Obviously, because the period of unlimited contestability had elapsed, we are not now concerned with the effect of innocent or unintentional concealments or misrepresentation. Our search is for conscious fault.

As we proceed with an analysis of the exhibited conduct of the insured, certain matters may be put to one side as either requiring no discussion or because we do not elect to rest our ultimate conclusion thereon. It is self-evident that the insured understood the purpose of the questions propounded and that she intended by her answers to induce the company to enter into a contract of insurance. Her signed application states: "I hereby apply for a Life Benefit, Inc., life insurance policy, to be based upon the statement of facts contained herein which are true and correct, full and complete, and are material and made by me, in behalf of myself and my beneficiary, to obtain the policy applied for; said statement of facts made herein are warranties for all purpose." It is also established beyond question that the company would not have consented to the contract if it had known the fact. Cf. SDC 31.0508. These points need not be labored. Even though the probability is great that at the time the questions were answered the insured knew she had been afflicted with cancer of the breast, or suspected as much, to the end that all uncertainty may be removed from the premise on which our ultimate conclusion rests, we prefer to infer only such knowledge on her part as is established beyond peradventure of doubt. Further, although we have noted that her answers fix the date of her operation in 1936 instead of in 1937, we assume that the trier of the fact would be warranted in charging that discrepancy to a good faith error.

■ Another matter should receive preliminary consideration. It is said that accepted rules of liberal construction, which interpret all ambiguities against an insurer as

the author of the forms used, require that the answer to question 10 supra—which is a double question asking about the past and present state of insured's health—should be accepted as true if the insured in good faith then believed she was not presently afflicted by any serious illness or ailment. Even-handed justice will not result from failing to read words in the sense the parties to a contract employed and understood them. The insured, viewed as a person of ordinary intelligence, could not have failed to understand that her answer, if it were to speak the truth, must be in the affirmative if she had ever had a serious illness or ailment, even though she in good faith deemed herself then to be in a state of sound health. The whole purport of the inquiries made render certain the fullness of her understanding of this particular question. She was advised by the content and self-evident purpose of the questions asked that the company sought a full and frank disclosure of her history as well as of her present condition. Construction which distorts the plainly revealed sense in which parties have understood words cannot be justified in the name of liberal interpretation. 29 Am. Jur. 185.

　　We are persuaded that the only inference warranted by the evidence as a whole is that insured consciously and intentionally misrepresented the history of her health. But little more than five months before the date of her application, concern over her health caused her to seek medical advice. Qualified physicians, then consulted, convinced her that the condition of her breast indicated the necessity of amputation of that organ. She then had a lump in one breast. It is reasonable to assume she must have known that nothing short of a serious condition or ailment would prompt her physicians to advise so drastic an operation. She submitted to the operation. That experience must have intruded itself upon her consciousness and have been uppermost in her mind as she underwent interrogation as to the history and present status of her health. Nevertheless, these vital facts were in part suppressed and she represented that she had never had a ser-

ious illness or ailment. True, she made a partial disclosure. She stated that she had had an operation, but she qualified her answers on that subject by saying she had had an "abscess lanced". The plain message her answers conveyed was that, while she had had a minor but very successful operation, she had never had a serious ailment. At a later time she had opportunity for a deliberate consideration of these questions and answers. The policy was not actually delivered until in May. On May 11th she signed and mailed a postal card, the bold type of which reads as follows: "Received of Life Benefit, Inc., Huron, South Dakota, Policy No. 3227. I hereby warrant that I have read the copy of my signed application on page three of this Policy and the answers to said questions are correct and the Policy is hereby accepted."

In sum, the company established that the insured, with intent to induce it to enter into a contract of insurance, suggested a fact that was not true, viz., that she had never had a serious ailment; that she knew she had had a serious ailment of the breast; that she suppressed and concealed the truth as she knew it, viz., that she had had a serious disorder of the breast and had had that breast removed; and that it would not have consented to the contract if it had known the facts thus concealed. Our statute characterizes such conduct as fraudulent. SDC 10.0307, supra. We conclude that this evidence made out a prima facie case of actual fraud. Morigeau v. Lozar, 81 Mont. 434, 263 P. 985, and see Damgaard v. South Dakota Benevolent Society, 62 S. D. 533, 254 N. W. 924.

■ In the absence of a counter showing the prima facie showing became conclusive. Peters v. Lohr et al., 24 S. D. 605, 124 N. W. 853. In applying this principle to a fact situation evidencing fraud, it has been well said: "A fair rule is that when the plaintiff makes proof of facts and circumstances which not only cast a suspicion on the transaction, but show a state of facts which cannot be fairly or reasonably reconciled with fair dealing and honesty of purpose, he has then overcome the presumption of purity of

intention, and has made a prima facie case. As fraud may be inferred from facts and circumstances proved, it is the rule that, when such facts and circumstances are sufficient to make a prima facie case of fraudulent intent, they may be taken as conclusive evidence of such intent, unless met by proof of other facts and circumstances sufficient to rebut and overcome the prima facie case already made." Demarest v. Winchester Repeating Arms Co., D. C., 257 F. 162, 173.

■■ Aside from the matters contained in our preliminary discussion of the facts, respondent advances two points as sustaining the learned trial court's finding of good faith. He invokes the presumption that men act in good faith. A prima facie case of fraud overcomes that well-established presumption. McKiver v. Theo. Hamm Brewing Co., 67 S. D. 613, 297 N. W. 445. He emphasizes the fact that the insured disclosed that she had had an operation and named her surgeon. That is to say, she told a partial truth. Nevertheless, her representations were false. A falsehood in its most common form presents some truth. With what reason could it be said, because she frankly disclosed that she had had an operation, and named her surgeon, that her description of that operation as an "abscess lanced", her representation that she had never had a serious ailment, and her concealment of the stark facts which lead to the loss of her breast, as well as the fact that her breast had been amputated, sprung from pure motives? Viewing her conduct in the light of her certain knowledge, the conclusion seems irresistible to us that, notwithstanding the truth contained in her statements, she was conscious of the falsity of the picture of past health presented by the application as a whole. It follows that we think an inference of conscious fault is impelled. Such conscious fault is the gravamen of actual fraud. Restatement of the Law of Contracts, § 471, comment (b).

These views foreclose the necessity of discussing other matters argued.

The order and judgment of the learned trial court are reversed.

All the Judges concur.