SABBAGH, Respondent v. PROFESSIONAL & BUSINESS
MEN'S LIFE INS. CO.

(116 N.W.2d 513)

(File No. 9977. Opinion filed August 2, 1962)

**Martens, Goldsmith, May & Porter,** Pierre, for Defendant and Appellant.

**Newell E. Krause,** Lemmon, for Plaintiff and Respondent.

ROBERTS, J. The defendant insurance company appeals from a judgment rendered against it for the amount of the first premiums paid on four policies of life insurance on the ground that they were obtained by fraud.

Plaintiff alleges in his complaint that defendant company issued to him four life insurance policies; that the agent for the defendant for the purpose of inducing plaintiff to apply for the insurance made fraudulent representations upon which plaintiff relied; that upon discovering the falsity of the representations plaintiff demanded return of the premiums amounting to $1725; and that defendant has refused to return the money paid to its agent. The answer of the defendant is first a general denial and then a specific denial that its agent was ever authorized by the defendant to make any false or fraudulent representations whatsoever to the plaintiff.

■■ If the complaint be interpreted as seeking relief other than rescission, the record clearly indicates that issues of rescission were tried with plaintiff's implicit consent.[1] Issues not pleaded may be treated as if pleaded when they are actually submitted to the trier of the facts by express or implied consent of the parties. SDC 33.0914; Durr v. Hardesty, 76 S.D. 232, 76 N.W.2d 393.

At the conclusion of the trial the court, sitting without a jury, made findings of fact which read as follows:

---

1. The following discussion was had at the commencement of the trial:
   "COURT: So ordered. Both sides ready for trial?
   "Mr. Porter: We are, your Honor.
   "Mr. Krause: Yes, your Honor.
   "Mr. Porter: According to my understanding then at the commencement of the action since the case is being tried to the Court so that we may know the plaintiff's theory, he proceeds on the basis of dissaffirming the contract and asking for rescission. Is that correct?
   "Mr. Krause: This is an action in fraud and deceit. The evidence will disclose that the plaintiff rescinded the contract and suing for the recovery of the actual damages which are in the form of the premiums paid and ask for exemplary damages, the same being an action in fraud.
   "By Mr. Porter: Yes, on grounds of fraud.
   "Mr. Krause: On the grounds of fraud.
   "Mr. Porter: And that you are disaffirming the contract.
   "Mr. Krause: Certainly, we are.
   "Mr. Porter: Yes, OK.
   "Mr. Krause: Rescinding the contract.
   "Mr. Porter: Well, I mean that narrows the issues and that is what we can do with a court trial."

## " I.

"The Court finds as a fact that the defendant, Professional and Business Men's Life Insurance Company, a foreign corporation, through its agent, Albert Bates, sold to the plaintiff, Michel I. Sabbagh, on April 30, 1959, at Lemmon, South Dakota, four insurance policies, issued by the defendant company bearing an effective date of May 1, 1959, being plaintiff's exhibits 1 through 4; that the plaintiff paid to the defendant the sum of One Thousand Seven Hundred Twenty-five Dollars ($1,-725.00) as premiums for said four policies.

## " II.

"The Court finds as a fact that the defendant, through its agent, Albert Bates, did make false and misleading statements and did make misrepresentations to the plaintiff concerning the following: The four policies would pay up in eight years; that they were a special policy and only available to a special group of people; that a policy holder would participate in the ownership of one hundred shares of stock for each policy; that at the end of twelve years, each policy would pay ten thousand dollars in cash. The Court finds as a fact that the defendant through its agent did show a resolution to the plaintiff identified as plaintiff's exhibit IA and that said resolution is not a portion of the policy nor was it printed on the policy form, nor had the defendant company filed said resolution as a part of the policy with the South Dakota Insurance Commission as is required by law as a condition precedent for sale of such policy.

## " III.

"The Court finds as a fact that defendant represented to the plaintiff that if he would purchase said policy he would participate in the

profits of the Company never less than the cash dividends paid on shares of the common stock of PBMI in the ratio of earnings on one hundred shares to each ten thousand charter policy and that in the event of a stock dividend or dividends, the cash dividends ratio would be included accordingly. The Court finds as a fact that said representation is false and is a misleading statement.

"IV.

"The Court finds that the defendant company instructed its agent Albert Bates and supplied him with sale material including copies of plaintiff's exhibit IA and deliberately and intentionally caused the fraudulent and false misrepresentations heretofore set out.

"V.

"The Court finds as a fact that Albert Bates was acting as a general agent of the defendant company at the time material herein.

"VI.

"The Court finds as a fact that the plaintiff relied on the false and misleading statements and misrepresentation made by the defendant through its agent to the plaintiff and was thereby induced to purchase said four policies of insurance."

The resolution referred to in the findings of fact as Exhibit IA was adopted by defendant company on January 2, 1959, and it was therein resolved as follows:

"BE IT RESOLVED THAT P.B.M.I. adopt the PRESIDENT'S SPECIAL POLICY program designed to attract 25,000 selected citizens as cooperative policy holders or the equivalent; and

"BE IT FURTHER RESOLVED THAT such Special Policies be issued on the President's Special Participating plan; and

"BE IT FURTHER RESOLVED THAT these policies shall participate in the profits of the Company—never less than the cash dividends paid on shares of the common stock of P.B.M.I.— in the ratio of earnings on 100 shares to each $10,000.00 Charter Policy. In the event of a stock dividend or dividends, the cash dividend participation ratio will be increased accordingly.

"This Special Participating feature shall be available only when the policy is in full force and all due premiums thereon have been paid. The minimum dividend will be paid on the basis of the cash dividend paid on the common stock during the previous calendar year."

No question is raised as to the sufficiency of the evidence to sustain the findings of the trial court as to misrepresentation by defendant's agent. Counsel for defendant assert, however, that delay in seeking rescission during which time the policies were in full force and effect and defendant was obliged to pay if any of the conditions happened upon which liability rested and failure to restore or offer to restore to defendant what the persons insured had received of value under the insurance contracts precluded recovery; that plaintiff chargeable with knowledge of the contents of the policies limiting the authority of soliciting agents had no right to rely on the representations of the agent and too the representations tended to vary the term of the insurance contracts; that plaintiff in paying premiums in the amount of $800 relied on the advice of his own attorney and not on that of defendant's agent and in the absence of such reliance has no cause of action therefor; and that prejudicial error was committed when a large volume of incompetent and hearsay evidence concerning the defendant company was received during the trial.

SDC 10.0804 provides:

"Rescission, when not effected by consent can be accomplished only by the use, on the part of

the party rescinding, of reasonable diligence to comply with the following rules:

"(1) He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, undue influence, or disability, and is aware of his right to rescind; and

"(2) He must restore to the party everything of value which he has received from him under the contract, or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so."

██ ██ There is a distinction between a legal rescission and rescission in equity. In the former, the rescission is by act of the party and is a condition precedent to bringing an action to recover money or thing owing to him by any other party to the contract as a consequence of the rescission. On the other hand, rescission in equity is effected by the decree of the court which entertains the action for the express purpose of rescinding the contract and rendering a decree granting such relief. 12 C.J.S. Cancellation of Instruments § 5. We are in the present action dealing with a legal rescission. The provision of section 10.0804, supra, provides how a contract by a party may be rescinded.

Was there a rescission within the requirements of the statute? It appears from the evidence that the four policies of insurance were delivered April 30, 1959. It does not appear from the evidence when plaintiff obtained actual knowledge of the fraud and the circumstances were not such as to charge plaintiff as a matter of law with constructive knowledge. See Nat. Bank of Dakota v. Taylor, 5 S.D. 99, 58 N.W. 297. There were representations as to matters outside of the policy and application. Defendant's agent assured plaintiff that he would acquire one hundred shares of the common stock of defendant company for each $10,-000 of insurance and the right to exercise certain voting privileges. The policies did not so provide. It was not a

situation where by the exercise of ordinary diligence plaintiff by examining the policies would have discovered the falsity of the representations. The attorney's letter of November 20, 1959, returning the four policies to the company and demanding refund of the premiums, made known to the defendant the election of the plaintiff to disaffirm the policies. December 18, 1959, J. R. Blevins, Vice President of the defendant company, replied stating that it would be for the best interest of all concerned to cancel the policies and enclosed a check for the "unused premium". December 28, 1959, plaintiff's attorney returned the check and demanded refund of the premiums in full less $116.00 which he claimed was a reasonable amount "for the protection offered from the date of the policy to the date of the refund". There was further correspondence with reference to the amount of the refund which we need not detail. January 22, 1960, Mr. Blevins wrote plaintiff's attorney as follows:

> "This will acknowledge receipt of your letter dated January 7, 1960, and I wish to state that I am happy that the check was not accepted by your client, as this check was sent out to you in error, as we were not authorized to make such a refund by Mr. Bates, who sold these policies.

> "I wish to advise that Mr. Bates is an independent contractor, and any adjustment made in contracts would have to be made or authorized by Mr. Bates.

> "I am returning the policies to you which are still in force with full protection, as they should be in the hands of your client. Our records show that the next annual premium will be due on May 1, 1960, and of course, if such payment is not made by that time, they will automatically lapse at the expiration of the grace period."

■ ■ Defendant contends that rescission was not timely as required by the statute above quoted. In Saunders

v. Farmers' & Merchants' Nat. Bank, 61 S.D. 261, 248 N.W. 250, it is said: "However, the delay in discovering the fraud is not what the statute covers. The statute provides that after discovering the fraud one must then rescind promptly. Failing so to do will deprive one of the right to rescind, although no prejudice or injury be shown as a result of the delay. Under the statute, promptness is made an imperative condition, without regarding the consequences on the other party. The matter is statutory, and not based upon an estoppel." Whether plaintiff elected to rescind promptly after discovering the fraud was under all the circumstances for consideration of the trial court. There is no finding of fact on this issue and it must be determined by the trial court before final disposition of this action can be made.

It is the contention of the defendant that the provisions of the statute above quoted required plaintiff as a condition of the policies being set aside by the judgment of the court to restore to the defendant the value of the protection the persons insured received at least for the period of May 1, 1959, when the policies became effective, to November 20, 1959, when plaintiff by letter advised the defendant company of the representations made by its agent and returned to the defendant the policies of insurance. The premiums received by defendant included coverage during the time the policies were in force. At the time of rescission, plaintiff did not have in his possession anything of value to be restored to defendant. A cause of action is dependent, first, as we have indicated, upon the contract being avoided promptly after discovering the fraud and, second, upon return or offer to return to the wrongdoer before commencing suit of that which the complaining party received. In other words, there can be no rescission of a contract unless the parties can be placed in status quo so far as circumstances permit.

■ It is true that each of the contracts of insurance in a sense was not that of the insured because of nonassent thereto with knowledge of the facts. See Federal

Land Bank v. Houck, 68 S.D. 449, 4 N.W.2d 213. However, the essential element of assent as we have indicated could have been added, actually or constructively, at any time by the plaintiff. In other words, he having been induced to enter into the transaction by fraud could have elected to affirm. The cases generally seem to take it for granted that contracts of insurance procured by the fraud of the insurer or its agents are not void, but only voidable at the election of the insured. We direct specific attention only to the much cited case of Bostwick v. Mutual Life Ins. Co., 116 Wis. 392, 89 N.W. 538, 92 N.W. 246, 67 L.R.A. 705, an action for recovery of premiums paid on life insurance policies the provisions of which by reason of the fraudulent conduct of the insurer's agent did not conform to his representations. The court therein said:

"Answering more particularly counsel's first proposition, a contract entered into by fraud on one side, or mistake through negligence on the other, is not absolutely void. * * * When the essential element of assent is added, it gives effect to the transaction as a binding contract from the beginning, the same as if no deception had been practiced. * * * Those principles apply with great force to this class of cases. The respondent had the full benefit of his insurance for nearly a year before he repudiated the transaction, and his assignees had the benefit of theirs for months before they acted in that regard. The entire period covered by the first premium upon respondent's policy had, before he refused to abide by such policy, nearly expired. No one would venture to claim that if he had died during such period of delay, the company would not have been bound by the policy and his personal representatives would not have enforced it."

Plaintiff demanded by letter return of all premiums paid less a reasonable amount for the protection

afforded while the policies were in force. This action, however, was brought to recover the premiums paid without deduction for the insurance protection enjoyed by the persons insured. An insured unquestionably is entitled to return of premiums when the contract of insurance is voidable for the fraud or misrepresentation of the insurer or its agents. Insurance Law and Practice, Appleman, § 8352. In Northwestern Mutual Hail Ins. Co. v. Fleming, 12 S.D. 36, 80 N.W. 147, wherein it was claimed that insured was induced to take out hail insurance by misrepresentation of the insurer, this court recognizing the status quo doctrine said:

> "In the case at bar the defendant had received the consideration stipulated, namely, his protection from loss by hail during the season of 1895. It would be manifestly unjust, therefore, to allow him to retain the full benefit of this protection, and, after the season for loss had expired, to rescind his contract on the ground of fraud, without making any remuneration to the plaintiff for such protection or insurance during the season."

In Provident Sav. Life Assur. Soc. v. Shearer, 151 Ky. 298, 151 S.W. 938, an action to recover the amount of premiums paid upon the ground of misrepresentations inducing the insured to surrender his old policy and to accept a new one in its place, the court said:

> "If the judgment appealed from should be allowed to stand and the company be required to return to Shearer the premiums he paid, with interest thereon, the necessary effect would be to give Shearer the full benefit of the policy during the time it was in force without any cost to him. During this time Shearer was protected by the policy, and if he had died the company would have been compelled to have paid the amount it agreed to pay in the contract of insurance. It is therefore very plain that, if this contract is to be

canceled and rescinded, it should be done upon equitable terms. The insurance company should not be required to carry insurance upon the life of Shearer for nearly five years without receiving any premium therefor, nor should Shearer be allowed to recover the premiums and yet not pay the insurance company anything for the insurance he had upon his life during the period covered by these premiums."

In the case of Moore v. Mutual Reserve Fund Life Ass'n, 121 App.Div. 335, 106 N.Y.S. 255, the appellate division of the New York Supreme Court by a three to two decision held that the status quo doctrine did not require a deduction for the intervening insurance protection which insured had enjoyed. After careful consideration of these conflicting views, we remain of the opinion expressed in the Fleming case that a policyholder is not entitled to rescission for fraud and misrepresentation and recovery of premiums paid without deduction for the value of the insurance protection enjoyed by him. The actual cost to the defendant of carrying the risks while the policies were in force is a matter of proof and defendant should be credited with that amount on recovery by plaintiff. Provident Savings Life Assur. Society v. Shearer, supra; McKindley v. Drew, 69 Vt. 210, 37 A. 285; 37 C.J.S. Fraud § 142(f); see also annotation in 136 A.L.R. 5. We may add that if the trial court proceeded upon the theory of fraud and deceit, the evidence was not sufficient to warrant judgment for the amount of the premiums paid. Northwestern Mutual Hail Ins. Co. v. Fleming, supra. This is not a case where no risk attached and the policy was void ab initio. In such instance insured is entitled to return of the premium paid since there was no consideration for the payment of the premium. A distinction in the two remedies is this: Rescission seeks to restore the status quo, but damages for fraud "must be measured by the usual tests of casualty rather than by an effort to restore the status quo ante." Ward v. Deavers, 92

U.S.App. D.C. 167, 203 F.2d 72, 76. Plaintiff seeking damages in a law action for fraud must prove that he has suffered damages directly as a consequence of the fraud and to an extent that is definite and ascertainable. 24 Am.Jur., Fraud and Deceit, § 265.

There was no evidence which would have enabled the trial court to determine the excess of the premiums paid over the benefits received. Defendant contends that it was incumbent upon plaintiff to submit to the court evidence upon which it could do equity between the parties. In Smith v. Keener, 54 S.D. 28, 222 N.W. 485, it is said: "One seeking rescission must furnish evidence to enable the court to do equity, where status quo cannot be restored." See also Perry v. Meyer, 110 Neb. 347, 193 N.W. 717; Fryer v. Campbell, 48 Wyo. 122, 43 P.2d 994. We believe that the evidence is insufficient in failing to show that defendant will so far as circumstances permit be restored to its former position.

The policies of insurance here involved contain the clause that this "policy, including the benefits and provisions printed or written hereon by the Company or attached hereto by the Company, and the application hereof, a copy of which application was attached hereto when this policy was issued, constitute the entire contract between the parties." The signed applications contain the following provision: "* * * the Company shall not be bound in any way by any statements, promises, or information made or given by or to any agent or other person at any time unless the same be reduced to writing and submitted to the Company at its Home Office and made a part of such contract." It is asserted that plaintiff is presumed to have known the contents of the contracts and cannot therefore hold defendant accountable for the unauthorized representation of the agent and too parol evidence of such representations tended to vary the terms of the written insurance contracts and was therefore improperly received.

■■ The general rule is that a contracting party is bound by an agreement to which he assents in the absence of fraud, mistake or accident, undue influence and the like and he will not be heard to say he did not intend to agree to its terms. Stoefen v. Brooks, 66 S.D. 587, 287 N.W. 330. The issue in this case was fraud. If the consent of a party to a contract would not have been given except for the fraud of the other party, the resulting contract may be voided. Life Benefit Inc. v. Elfring, 69 S.D. 85, 7 N.W.2d 133. The rule which makes parol evidence inadmissible to vary the terms of a written instrument is qualified to permit such evidence where a contract is induced or procured by fraud. Baker v. Jewell, 77 S.D. 573, 96 N.W.2d 299; Rochford v. Barrett, 22 S.D. 83, 115 N.W. 522; National Cash Register Co. v. Mahaney, 49 S.D. 1, 205 N.W. 710.

The rule is stated thus in 32 C.J.S. Evidence § 979; "It is well established that, as fraud vitiates everything which it touches, parol evidence is always admissible to show, for the purpose of invalidating a written instrument, that its execution was procured by fraud, or that, by reason of fraud, it does not express the true intentions of the parties. The rule in this respect is not rendered inapplicable by the fact that the writing contains a recital to the effect that all agreements between the parties are contained therein, * * *. Thus it has been frequently held that even if the contract, when reduced to writing, places limitations on the agent's authority, parol evidence is admissible to prove fraudulent representations of an agent by which the contract was induced."

■ There was fraud and misrepresentation at the inception of the transaction between the plaintiff and the agent of defendant company. If the parol evidence rule did not permit introduction of evidence where a contract is induced or procured by fraud, a contracting party could as this court stated in National Cash Register Co. v. Mahaney, supra, "claim the benefits of the contract and repudiate the means by which it was obtained." The de-

fendant is not immune from liability because of the recitals contained in the writings to which we have referred.

Plaintiff at the time of signing the applications gave his note to defendant's agent for a part of the first premiums. Plaintiff to pay the note mailed the agent his check dated October 31, 1959. Plaintiff testified that he had a short time previously left the policies and premium receipts with his attorney. Defendant contends that plaintiff acting on the advice of his attorney in making such payment cannot now claim that he was induced to part with the amount of this check through fraudulent representation of defendant's agent. We think that this situation is different from that in Frazell v. Life Ins Co. of Virginia, 153 N.C. 60, 68 S.E. 912, cited by defendant, where insured testified that he did not believe what the soliciting agent had told him, but sought the advice of his attorney as to the meaning of the insurance contract. We agree with plaintiff's contention that there is no proof that this payment was made after discovery of the fraud. It does not appear that plaintiff had been advised by his attorney as to the meaning of the insurance contracts and the effect of falsity of the representations unrevealable from a reading and examination of the insurance contracts.

■ ■ The other errors are predicated on the introduction of certain testimony over objection. Defendant urges that the testimony was incompetent. This was an action tried to the court without a jury and many factors that would be considered prejudicial in a case tried to a jury will not be so held in case of a trial to the court. This court has usually held that where there is sufficient evidence properly before the court to sustain its findings the fact that improper evidence was received will not be considered reversible error. That presumption is that the trial court did not rely upon improper evidence. In re Stensland's Estate, 63 S.D. 204, 257 N.W. 129; In re Hoisington's Estate, 67 S.D. 280, 291 N.W. 921. We need not undertake to consider and determine the competency of the testimony introduced over objection.

██ We are in position to dispose of this appeal without directing a new trial. The judgment is reversed and the cause remanded with directions to determine the question of fact as to whether plaintiff rescinded the contracts of insurance promptly after obtaining knowledge of the fraud and to allow the introduction of evidence and to make finding of fact as to the actual cost of insurance protection afforded while the policies were in force and then to enter judgment in accordance with this opinion.

RENTTO, P. J., and SMITH, J., concur.

HANSON, J. (dissenting).

I would affirm.

If this action is considered to be one for rescission, as the majority opinion indicates, there is no reason to remand it to the trial court "with directions to determine the question of fact as to whether plaintiff rescinded the contracts of insurance promptly after obtaining knowledge of the fraud". As Judge Rentto pointed out in the case of Beatty v. Depue, 78 S.D. 395, 103 N.W.2d 187,

> "Our rule concerning diligence in seeking rescission is spelled out in SDC 10.0804. That section states as follows:
>
> " 'Rescission, when not effected by consent can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:
>
> " '(1) He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, undue influence, or disability, and is aware of his right to rescind.' Before one is under any duty to act he must have discovered the facts entitling him to rescind and be aware of his right to rescind. Bancroft v. Woodward, 183 Cal. 99, 190 P. 445; McCray v. Title Ins. & Trust Co., 12 Cal.App.2d 537, 55 P.2d 1234;

Gedstad v. Ellichman, 124 Cal.App.2d 831, 269 P.2d 661. Or putting it another way, our statute reads that the mistaken party 'must rescind promptly upon discovering the facts which entitle him to rescind, if he * * * is aware of his right to rescind.' "

The undisputed evidence in this case clearly shows that plaintiff rescinded the policies of insurance promptly upon discovering the facts which entitled him to rescind and after he became aware of his right to rescind in accordance with SDC 10.0804 as interpreted by this court in the case of Beatty v. Depue, supra, and we should so hold as a matter of law.

Also, under the majority view it would seem more equitable to affirm and remand this action with directions rather than to reverse with directions, as the prevailing party is now obligated to pay the costs of appeal.

BIEGELMEIER, J. (dissenting).

The complaint is an action in deceit and asks actual and punitive damages for false and fraudulent representations; the trial court's findings followed that theory allowing only actual damages; neither the word rescission nor hint of it appears in either. Plaintiff stated the evidence would show he rescinded the contract and "This is an action for fraud and deceit". No order was made at the pretrial hearing to change or limit this theory, as permitted by SDC 1960 Supp. 33.1003.

This court has said in Northwestern Mutual Hail Ins. Co. v. Fleming, 12 S.D. 36, 41, 80 N.W. 147, 148, where

"fraud has been practiced (upon a person) * * * two courses are open to him: (1) He may rescind the contract in the manner provided in the statute; or (2) he may, upon discovering the fraud, bring an action for the deceit * * *"

and in The First National Bank of Webster v. First National Bank of Mobridge, 45 S. D. 335, 338, 187 N.W. 623, 624, (1922):

"The right to sue for damages for fraud and deceit without rescission and without an offer to return the property purchased * * * is well established * * *."

Accord: Kordis v. Auto Owners Ins. Co., 311 Mich. 247, 18 N.W.2d 811, 813. The measure of damages for fraud is "the cash paid by her upon the policy, with interest". Rohrschneider v. Knickerbocker Life Ins. Co., 76 N.Y. 216, 32 Am.Rep. 290, cited in 136 A.L.R. 10, 21 and 59. The same result was reached in a similar suit against the defendant in the present action in Stegman v. Professional & Business Men's Life Ins. Co., 173 Kan. 744, 252 P.2d 1074 (1953) which affirmed recovery of the whole premium paid, though the opinion uses the words "rescind" and "rescission."

Even in the cases speaking of rescission, return of the policy is sufficient, not return of any part of the premium. The reasoning for this appears in the cases in 136 A.L.R. 8 and 56. Otherwise the company would profit by its own fraud, and, as the Vermont court puts it, require payment for the use of a horse before the rescission. See also McCarty v. New York Life Ins. Co., 74 Minn. 530, 77 N.W. 426; Appleman, Insurance Law and Practice, § 8352 and § 11276 (Vols. 15 and 20). Prompt action by the plaintiff is implicit in the trial court's findings and judgment for him. Defendant offered no proof in mitigation of the damages. If defendant has sustained any loss it may have recourse against its own agent. I would affirm.