STOLTENBURG, Circuit Court Judge
(dissenting).
[¶ 39.] I respectfully dissent.
[¶ 40.] The majority opinion holds that an insured’s conversation with an insurance agent 14 years prior to submitting an application for insurance creates a duty to disclose the content of that conversation. According to the Court, this duty to disclose, although done with no intent to deceive, creates a legal basis for voidance of the insurance policy.
[¶ 41.] Here, David Busskohl suffered a fire loss approximately one year after De Smet Farm Mutual insured his property. De Smet paid the loss in the sum of $476,350. When Busskohl contended that his agent had underinsured the property, De Smet reviewed the application for insurance and determined that Busskohl was refused similar insurance 14 years prior to applying for insurance with De Smet, and thus, made a misrepresentation entitling De Smet to void the policy.
[¶ 42.] The question at issue on the De Smet insurance application is as follows: “Has an insurer cancelled, refused, restricted or declined to renew similar insurance?” Busskohl answered “no”. De Smet does not contend that an insurer “cancelled”, “restricted”, or “declined to renew” similar insurance for Busskohl. However, it does contend that Busskohl was “refused similar insurance!],]” and thus, made a misrepresentation in his application. So how was Busskohl refused similar insurance? The refusal stems from a verbal conversation held by Busskohl and his wife with an insurance agent 14 plus years prior to his application to De Smet. Busskohl made no written application for insurance, nor was he ever notified in writing that he was refused. Yet, it is this conversation that forms the legal basis to deny financial compensation for the total loss of Busskohl’s home and its contents.
[¶ 43.] Furthermore, although the majority deems Busskohl’s answer to be a misrepresentation as a matter of law, no intent to deceive or defraud is present in this case. Consequently, without any intent to deceive requirement for a misrepresentation, Busskohl is held to a mere negligence standard.
[¶ 44.] SDCL 58-11-44 states in pertinent part:
All statements and descriptions in any application for an insurance policy, certificate, or annuity contract, by or on behalf of the insured or annuitant, shall be deemed to be representations and not warranties. No misrepresentation, omission, concealment of fact, or incorrect statement prevents a recovery under the policy or contract unless:
(1) Fraudulent or an intentional misrepresentation of a material fact; or
(2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.
[¶ 45.] Although De Smet contends that it would not have issued the policy to Busskohl because he was refused similar insurance in the past, it is clear from the *838 record that it is not the fact that Busskohl was “refused similar insurance,” but the fact that Busskohl had prior insurance claims.[7] Consequently, De Smet, now armed with this prior loss information, asserts that it would not have issued the policy and such information was material to their acceptance of the risk. Importantly, De Smet’s application for insurance specifically requests information about past claims, but only for the past 3 years.[8] Busskohl’s fire loss claims were 21 and 14 years prior to his application to De Smet! De Smet has now successfully brought these two prior claims into this litigation through the proverbial back door. If De Smet wanted to underwrite its risk based upon past claims, it should be required to do so in a straightforward question on its application form.
[¶ 46.] The circuit court and now this Court incongruously permits De Smet to circumvent its own underwriting process to the detriment of Mr. Busskohl. The effect of the majority opinion seemingly opens the door for insurers to backward underwrite its issued policies and deny otherwise valid claims based upon subsequent investigations to answers on its application forms going back untold years. Is any casual conversation with an insurance agent, however long ago, now going to be the basis for possible denial of otherwise insured losses? More should be required.

Busskohl’s Application Response Did Not Constitute a Misrepresentation.

[¶ 47.] Busskohl’s “no” answer on the application should not be considered a misrepresentation. The well-established principle is that “a contract of insurance is to be construed liberally in favor of the insured and strictly against the insurer.” Strong, 76 S.D. at 369, 78 N.W.2d at 829 (citing Ehrke v. N. Am. Life & Cas. Co., 71 S.D. 376, 24 N.W.2d 640 (1946)).
[¶ 48.] The rule of liberal construction in favor of the insured and strict construction against the insurer applies only where the language of the contract is ambiguous and susceptible of more than one interpretation and is also subject to the further limitation that such language ordinarily cannot be construed otherwise than according to its plain and ordinary meaning.
Id. at 369, 78 N.W.2d at 829 (quoting 44 C.J.S. Insurance, § 297(2)). “Construction which distorts the plainly revealed sense in which parties have understood words cannot be justified in the name of liberal interpretation.” Id. (quoting Life Benefit, Inc. v. Elfring, 69 S.D. 85, 90, 7 N.W.2d 133, 135 (1942)).
[¶ 49.] The words used by De Smet in its application are terms of art in the insurance industry and under our state statutes. See SDCL 58-11^6,^7,-49,-50 (“cancelled”); SDCL 58-15-11,-69 (“restricted”); SDCL 58-11-51,-52,-53 (“non-renewal”). “Refusal” is a term of art used in the insurance context and has a very specific meaning. Specifically, as it relates to the facts of this case, SDCL 58-11-45.3 requires an insurer to provide notice to the applicant on its “refusal” to insure, but this “refusal” only occurs if the applicant has tendered a premium with the application. *839 A violation of this statute by an insurer constitutes a Class 2 misdemeanor.
[¶ 50.] Here, the evidence is undisputed that when the Busskohls had a conversation with an American Family agent in 1990, no premium was tendered, nor was any formal application submitted to the insurer. How was Busskohl “refused similar insurance” under our state statutes? As a matter of law, Busskohl was not refused similar insurance and there was no misrepresentation made by him to De Smet. Our laws require very specific actions by insurers to “cancel,” “restrict,” “nonrenew,” and “refuse to insure” individuals to whom they deal with and subjects insurers to criminal penalties if the rules are not complied with. The circuit court and the majority are in error in leaping to the legal conclusion that a misrepresentation was made by Busskohl on the insurance application.
[¶ 51.] Furthermore, public policy dictates a different result under the circumstances of this case. Good faith and fair dealing are at the heart of the relationship between an insurer and its insured. Good faith is required by SDCL 58-11-44. This Court has approved language reflecting the realities of this relationship:
The insurer’s obligations are ... rooted in their status as purveyors of a vital service labeled quasi-public in nature. Suppliers of services affected with a public interest must take the public’s interest seriously, where necessary placing it before their interest in maximizing gains and limiting disbursements.... [A]s a supplier of a public service rather than a manufactured product, the obligations of insurers go beyond meeting reasonable expectations of coverage. The obligations of good faith and fair dealing encompass qualities of decency and humanity inherent in the responsibilities of a fiduciary. Insurers hold themselves out as fiduciaries, and with the public’s trust must go private responsibility consonant with that trust.
Trouten v. Heritage Mutual Ins. Co., 2001 S.D. 106, ¶ 31, 632 N.W.2d 856, 863 (quoting Egan v. Mut. of Omaha Ins. Co., 24 Cal.3d 809, 169 Cal.Rptr. 691, 620 P.2d 141, 146 (1979)) (internal citation omitted) (alterations in original). Simply stated, insurer questions posed on an application for insurance should not become a landmine field for an insured to traverse.
[¶ 52.] For these reasons, I respectfully dissent.

. Busskohl made and collected insurance proceeds on two prior fire loss claims dating back to 1983 and 1990: 21 and 14 years respectively, prior to applying for insurance with De Smet.

. Busskohl answered "no” to the question on De Smet’s application asking whether Bus-skohl had any ”[c]laims or losses during past three years which were or would have been covered by similar insurance?” There is no assertion that Busskohl misrepresented his answer to this question.